William Henry EASTHAM, Appellant,

v.

The STATE of Texas, Appellee.

No. 59093.

Court of Criminal Appeals of Texas, En Banc.

June 4, 1980.

---

Harry Tom Petersen, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Paul J. Kubinski, Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON REHEARING ON COURT'S OWN MOTION

ONION, Presiding Judge.

Our prior opinion on original submission is withdrawn and the following is substituted in lieu thereof.

This appeal is taken from a conviction for murder, where the punishment was assessed by the jury at ninety-nine (99) years' imprisonment.

On appeal appellant raises five grounds of error. He challenges the lack of a jury at the restoration of competency hearing, contends the evidence at such hearing was insufficient to support a finding of competency to stand trial. Further, appellant contends the trial court should have, sua sponte, halted the trial on the merits when evidence of his incompetency to stand trial was received and conducted separate proceedings to determine that issue. He also urges the court erred in sustaining the State's objections to his counsel's questioning of a doctor, a defense witness, as to whether he was suffering from a mental disease or defect or was capable of conforming his conduct to the requirements of the law.

Appellant was indicted on October 2, 1975 for the murder of his mother on or about

September 19, 1975. On April 1, 1976, a jury in a competency to stand trial hearing found the appellant incompetent to stand trial and also found there was no substantial probability that he would become competent within the foreseeable future. On March 24, 1977, a mental health report on appellant, including an evaluation and disposition, was filed in the trial court. It was dated March 21, 1977, and was signed by Robert B. Sheldon, M. D., Superintendent of the Rusk State Hospital, where the appellant had been committed. The report stated Dr. Sheldon's opinion that the appellant was not now mentally ill and not in need of hospitalization for his own protection and welfare of others and now mentally competent to stand trial. Attached to the report was an evaluation signed by Dr. Sheldon and James A. Hunter, M. D., Clinical Director, Maximum Security Unit, Rusk State Hospital.

On October 10, 1977, a restoration of competency hearing was conducted before the court. At the outset the court determined there were no objections to the court "trying the matter." The court was then informed that the appellant personally and his counsel and the State had executed a jury waiver concerning the hearing. Such a waiver is in the record. The court orally inquired of the appellant personally if it was his desire to waive a jury trial on the question of competency and was assured that it was. The prosecutor then offered State's Exhibit No. 1 into evidence stating, "which exhibit is a certified letter addressed to the District Attorney from Dr. Robert B. Sheldon and Dr. James A. Hunter, both physicians at the Rusk State Hospital, . . . in which the Defendant is, in the opinion of the examining physicians, '. . . now mentally competent to stand trial.'" Appellant's counsel expressly stated there was no objection to offer and the exhibit was admitted. The State rested and offered no further evidence. The appellant offered no evidence. Thereafter the court found the appellant competent to stand trial and entered a restoration judgment.

In connection with the first two grounds of error complaining about the lack of a jury at the restoration hearing and the insufficiency of the evidence, we observe that both the appellant and the State cite to us and quote from Article 46.02, § 5, V.A.C. C.P., as to the procedure to be utilized in restoration proceedings. It appears that since the appellant was found incompetent to stand trial by a jury who also found there was no substantial probability that he would become competent in the foreseeable future he was civilly committed with criminal charges pending under § 6 of Article 46.02, supra, in effect on April 1, 1976 [Acts 1975, 64th Leg., p. 1095, ch. 415, § 1, eff. June 19, 1975]. This section also provided for a restoration procedure which was in effect at the time of the Mental Health Report in March, 1977. At the time of the restoration hearing on October 10, 1977, Article 46.02, supra, had been once again amended [Acts 1977, 65th Leg., p. 1458, ch. 596, § 1, eff. Sept. 1, 1977]. § 8(d) and (e) of the amended statute reads as follows:

"(d) The head of a mental health or mental retardation facility to which a person has been committed or transferred as a result of the proceedings initiated pursuant to Section 6 of this article and who has received written notice from a court or prosecuting attorney that criminal charges are pending against the person shall notify the court in writing at least 14 days prior to the discharge of the person unless the notice provided for in (c) above has been given. A written report as to the competency of the person to stand trial shall accompany the notice of discharge.

"(e) On written notice by the head of a mental health or mental retardation facility that in his opinion a person who has been civilly committed to that facility and against whom criminal charges are pending is competent to stand trial, or on good cause shown by the defendant, his counsel, or the prosecuting attorney, the court in which the criminal charges are pending may hold a hearing to determine the competency of the defendant to stand trial. The hearing shall be before a jury

unless waived by agreement of the parties. The order setting the hearing shall order the defendant placed in the custody of the sheriff for transportation to the court. The court may appoint disinterested experts to examine the defendant in accordance with the provisions of Section 3 of this article. If the defendant is found to be competent to stand trial, the proceedings on the criminal charges may be continued. If the defendant is found incompetent to stand trial and is under an order of commitment to a mental health or mental retardation facility, the court shall order him placed in the custody of the sheriff for transportation to that facility."

Appellant complains of the lack of a jury at the restoration of competency hearing. There was no jury because a jury had been waived by agreement of the parties in accordance with the statute above quoted. Appellant does not point to any constitutional or statutory provision that mandates a jury trial in every restoration of competency hearing. He does not claim the jury waiver was not voluntarily and knowingly made, and he produced no evidence or data that all persons previously found to be incompetent to stand trial, etc., and represented by counsel may not execute a valid jury waiver. Appellant's first contention is overruled.

■ Appellant further contends the evidence was insufficient at such hearing to support a finding of competency. He contends State's Exhibit No. 1 was hearsay and that hearsay is without probative value, even if admitted without objection, citing *Mendoza v. State*, 522 S.W.2d 898 (Tex.Cr. App.1975), and *Reynolds v. State*, 489 S.W.2d 866 (Tex.Cr.App.1972). The State's Exhibit No. 1 appears to have been the letter-report-evaluation of Dr. Sheldon mentioned earlier as filed by the clerk some months before the hearing. The exhibit itself is not in the record. Whether it was certified and therefore admissible under Article 3731a, V.A.C.S., we cannot tell. It may well have been. In light of the record, appellant's second contention is overruled.

■ Next, appellant contends the court erred in not moving on its own to halt the trial on the merits and to institute a separate competency hearing upon receipt of evidence of incompetency at the time of trial. After the trial court found appellant competent to stand trial in the proceedings discussed above, the trial on the merits commenced three weeks later. At no time before trial did the appellant or his counsel request another competency hearing before a jury or suggest to the court that there was evidence of incompetency. During the trial neither the appellant nor his counsel pointed out to the court the evidence they now claim raised the issue of incompetency nor requested separate proceedings to determine the issue. Appellant claims on appeal for the first time the court should have taken such action on its own motion. Attention is now called to certain testimony.

Appellant's defense at trial was insanity at the time of the commission of the offense. In support thereof, the defense called Dr. Joseph Hornisher, a psychiatrist, who had treated the appellant in a hospital in late 1975 and early 1976, and again in August and September 29, 1977. Dr. Hornisher had testified at the competency hearing in 1976 prior to appellant's being committed to Rusk State Hospital, and had testified he was incompetent to stand trial at that time.

Our attention is called to several portions of Hornisher's testimony. At one point Hornisher was asked on cross-examination how much time he spent talking to the appellant on his hospital rounds. In his largely unresponsive answer he, inter alia, stated, "There is no doubt in my mind this man is psychotic." On direct examination he testified the appellant started off as a catatonic but was now a paranoid. When then asked to explain in lay terms what the appellant was suffering from, the doctor, again largely unresponsive, stated, "Well he is delusional and mixed up and unable to cooperate with his attorney and unable to cooperate with us . . .." At another point on cross-examination Hornisher testified that appellant's present mental condi-

tion was the same, apparently as when he was first examined, but this is not made clear by the questioning. Appellant also cites Dr. Thomas Fagan, Jr.'s testimony as supporting his contention, but does not direct our attention to any particular portion of the same. We have examined Fagan's testimony and find nothing supportive of appellant's contention.

Article 46.02 § 2(b), V.A.C.C.P., provides:

"(b) If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial."

In *Ainsworth v. State*, 493 S.W.2d 517 (Tex.Cr.App.1973), it was stated:

"An accused is not required to prove actual insanity or incompetency before the trial judge is required to conduct a separate hearing on the matter. If this were the rule, the separate hearing procedure would become meaningless. *However, it is necessary that evidence come before the court, from some source, of sufficient force to create in the court's mind reasonable ground for the judge to doubt the competency of the accused to stand trial.* Once this occurs, the court should conduct a hearing out of the presence of the jury to determine whether or not there is in fact an issue as to the competence of the accused to stand trial." (Emphasis supplied.)

In *Vardas v. State*, 488 S.W.2d 467 (Tex.Cr.App.1972), this court wrote:

"Even where no request or demand is made for a preliminary hearing but *evidence as to the accused's present incompetence becomes sufficiently manifest during the trial on the merits*, then due process of law would require the trial judge to halt the trial and conduct a hearing on that issue on his own initiative before proceeding further. . . ." (Emphasis supplied.)

The appellant was committed to the Rusk State Hospital, and was later referred back to the trial court as mentally competent to stand trial. The trial court found the appellant was competent to stand trial without objection from appellant or his counsel. Three weeks later the trial on the merits commenced with no motion or request for a pre-trial competency hearing. During the trial the above described testimony, for the most part, is lifted out of portions of the rambling and unresponsive answers of Dr. Hornisher. It is difficult at times to tell whether Hornisher is referring to times prior to appellant's commitment to Rusk State Hospital or after his return.

We cannot conclude that evidence of the appellant's present incompetence became sufficiently manifest during the trial on the merits that the trial judge was required, on his own motion, to halt the proceedings and conduct a separate hearing on appellant's competency to stand trial. See and cf. *Ferguson v. State*, 579 S.W.2d 2 (Tex.Cr.App. 1979); *Johnson v. State*, 583 S.W.2d 399, 403 (Tex.Cr.App.1979).

■ In two grounds of error appellant contends the court erred in sustaining the State's objections to his attempt to elicit from Dr. Hornisher whether he (appellant) was suffering from a mental disease or defect, or whether he (appellant) was capable of conforming his conduct to the requirements of the law. His defense was insanity at the time of the commission of the offense.

On direct examination Dr. Hornisher, a defense witness, was asked if the appellant was capable of conforming his conduct to the requirements of the law. His answer was rambling, about the appellant having emotional trouble before and after his teenage years, difficulty in adjusting and finding a job, loafing around the house, etc. The question was never really answered. He was then asked whether appellant was suffering from a mental disease and defect on September 19, 1975 (the date of the alleged offense). He answered, "I believe this condition has been of long duration and probably even longer than that, and that is what was reported to previous hearings."

On cross-examination by the State Dr. Hornisher was again asked if the appellant was suffering from a mental disease on the said September 19th. His answer was, "Well, this condition is of long duration, it is not something that just happens." When asked on cross-examination about whether the appellant was able to conform his conduct to the requirements of the law on September 19th, the doctor answered, "I don't know because I didn't see him for another month or two more months passed before I saw him."

On re-direct examination appellant's counsel again asked the witness if he (appellant) had been suffering from a mental disease or defect on September 19th and if the appellant was able to conform his conduct to the requirements of the law. Both questions were objected to by the State on the basis that the appellant was attempting to impeach his own witness. Both objections were sustained on that basis.

The court's rulings were erroneous, but there were no bills of exception perfected to show what the witness would have testified to if he had been allowed to answer the questions on re-direct examination. Nothing is presented for review.

The judgment is affirmed.