**Linda Gail LOFTIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 68327.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 9, 1983.

Rehearing Denied Dec. 14, 1983.

---

Clyde F. DeWitt, III, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Timothy G. Taft and Bill Taylor, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

Appellant was convicted, in a trial before the court held on October 15, 1980, of the murder of Samuel Barranco. Punishment was assessed at 35 years confinement.

In her sole ground of error, appellant contends that the trial court erred in failing to order, sua sponte, a hearing on the issue of appellant's competency to stand trial.

The record reflects that prior to trial and pursuant to a motion by the State, the court ordered a psychiatric examination of appellant in order to determine both her sanity at the time of the offense and her competency to stand trial. Dr. Jerome Brown, a clinical psychologist at the Harris County Psychiatric Hospital, examined appellant on July 31 and August 7, 1980. In his written reports to the court, Brown concluded that appellant was *insane* at the time of the offense, but was *competent* to stand trial at the present time. Appellant, after proper notice, pled not guilty by reason of insanity.

Appellant's court-appointed attorney on appeal concedes in his brief on appellant's behalf that appellant's retained trial attorney did not in any manner raise the issue of appellant's competency to stand trial or request a hearing on the issue. Appellant contends, however, that the issue of competency was raised throughout the testimony adduced at trial and that the trial court should have, sua sponte, interrupted the proceedings and accorded appellant a competency hearing.

The evidence is undisputed that appellant shot the victim, a person she apparently barely knew, after the victim drove into the parking lot of the apartment complex in which both resided in separate apartments. In its case in chief, the State presented the testimony of seven residents of the apartment complex. Although none of the witnesses actually witnessed the shooting, the testimony showed that on the evening of June 12, 1980, appellant was waiting in the parking lot when Barranco, the victim, drove up. After Barranco exited his car, the appellant shot him three times in the chest. Several witnesses testified they heard a male voice say "please, don't" or "please help" immediately prior to or after the sound of the gunshots. When the witnesses reached the scene of the offense, Barranco was on the ground and the appellant was "calmly" standing nearby. Before the police arrived, appellant made several

statements to the effect that she had killed him and someone should call the police. The gun, which according to another witness had been sold to "Dimples F. Loftin" several years earlier, was seized by the Houston police at the scene. Other witnesses, including a medical examiner and a chemist, testified that one of the bullet wounds was caused by a firearm being discharged within three inches of the victim.

Appellant offered the testimony of Stanley Schneider, an attorney who described his two interviews with appellant. During the first interview which occurred approximately two years before the offense, appellant complained of being harassed by the principal of the school at which she was at that time working as a special education teacher. Schneider recommended that appellant initiate grievance procedures through the school district and ask for a transfer. Schneider's second interview with appellant occurred a week before the offense. She complained at that time of a continuation and escalation of the harassment by this principal which included, among other unsubstantiated claims, that he had hired Barranco to move into her apartment complex in order to harass her, to bug her apartment, and to convey the information overheard to her present employers. Schneider testified that she complained of how "everyone was persecuting her. It wasn't just the one person. Every place she went, every job she had in the two-year period of time, every place she worked there was a plot against her." Schneider concluded that she was "extremely paranoid about everything that was going on around her" and recommended that she see a good doctor or, alternatively, hire a good private investigator to substantiate her claims of harassment.

Dan Welsh, a private investigator, testified that appellant hired him one week prior to the offense. With her approval, Welsh recorded their first hour-long conversation. During the taped interview, which was admitted into evidence and is part of the record on appeal, appellant related essentially the same story she had told Schneider. She stated the situation had gotten so bad she was afraid for her life. She also related in detail her belief that Barranco had moved into her apartment complex at the behest of the school principal solely to keep an eye on her. At one point she said she believed Barranco had tried to run her down on the freeway. At another point she said "people" at work were telling her she was going to have to marry Barranco and quit working. Although she told Welsh she had probably exchanged only thirty words with Barranco, she was convinced he was bugging her apartment and repeating things he overheard to other people "who were always talking about her." She attributed her employment problems and her fears for her life directly to the interference of the school principal and Barranco.

Appellant's last witness was Dr. Brown who testified that appellant was suffering from a severe mental illness with the result "that her psychological functioning had deteriorated to the point that she developed a dillusional [sic] system about certain people in her life that had no—and certain kinds of conspiracy and plots against her that had no basis in reality." The result of the delusions, according to Brown, was the commission of the offense.

In rebuttal, the State called several witnesses who testified that, in fact, appellant was the one who approached and harassed Barranco and that Barranco attempted to avoid appellant. Her employer at the time of the offense testified that appellant was a good, dependable employee and that, contrary to her statements to Welsh and Schneider, no one at her job had known Barranco or warned her about him. A jail employee testified that appellant did not cause problems, did not act out of the ordinary, and had never complained of her treatment.

The test of legal competence to stand trial is whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings

against him. Art. 46.02, Sec. 1, V.A.C.C.P.; *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); *Thomas v. State,* 562 S.W.2d 240 (Tex.Cr.App.1978), cert. denied, 439 U.S. 833, 99 S.Ct. 112, 58 L.Ed.2d 127 (1978).

Article 46.02, Sec. 2(b) V.A.C.C.P., provides:

"*If during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source,* the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial." (Emphasis added).

Thus, a trial court is required to sua sponte hold a competency hearing when evidence coming to the court's attention raises a bona fide or reasonable doubt as to appellant's competency.[1] *Mata v. State,* 632 S.W.2d 355 (Tex.Cr.App.1982); *Morales v. State,* 587 S.W.2d 418 (Tex.Cr.App.1979); *Ferguson v. State,* 579 S.W.2d 2 (Tex.Cr.App.1979); *Thomas,* supra. Evidence raising a bona fide doubt is that evidence that produces a real doubt in the judge's mind as to the defendant's present ability to consult with his lawyer with a reasonable degree of rational understanding or as to his present ability to understand the proceedings against him. *Mata,* supra.

In *Mata,* supra at 359, Judge McCormick stated:

"Generally, to raise the issue, there must be evidence of *recent* severe mental illness or bizarre acts by the defendant or of moderate retardation. *Porter v. State,* 623 S.W.2d 374 (Tex.Cr.App.1981)." (emphasis added).

Appellant contends that the evidence raised a reasonable doubt as to her competency because there was testimony showing that she suffered from a mental illness which caused her to misunderstand the facts and circumstances surrounding the offense, a misunderstanding which she apparently still clung to at the time of the presentence investigation when she referred the investigator to her original account of the offense. She argues that because her "understanding of the facts and circumstances surrounding the offense obviously had no basis in reality ... she was incompetent to stand trial."

■ All the testimony showed that appellant, in spite of her alleged paranoia, communicated articulately, coherently, and responsively with those around her; held down a responsible job at the time of the offense; and was sufficiently aware of the consequences of her action in shooting the victim that she immediately recommended that the police be called. The psychiatrist who examined her approximately two months before the trial found that appellant, although mentally ill, could "assist [her lawyer] with a reasonable degree of rational understanding;" that she demonstrated "a rational as well as factual understanding of the charges against her;" that her mental illness had "not sufficiently disrupted her ability to participate in the proceedings against her;" and that she was "sufficiently defended and still psychologically intact enough to fulfill the criteria for competency to stand trial." Although he further cautioned in his report to the court that appellant should be carefully observed in order to prevent a positive deterioration in her mental stability which might lead to her incompetency in the future, there was *no* evidence presented at the time of the trial from which the judge could conclude that such had occurred. Moreover, the only direct evidence as to appellant's competency after the psychiatric examinations came from the testimony of a jail employee to the effect that appellant had made no complaints about her treatment and had behaved as any other prisoner. Furthermore,

---

1. We recognize that in *Sisco v. State,* 599 S.W.2d 607 (Tex.Cr.App.1980), Judge Clinton inferentially questioned the validity of the bona fide *doubt* standard. We do not examine that issue in this opinion for two reasons: (1) the issue was not raised by appellant in his brief; (2) as will be seen infra, even under the *Sisco* standard the result would be the same, i.e., putting aside all competing indications of competency, there is *no* evidence that would rationally lead to a conclusion of incompetency.

appellant's attorney did not complain of any inability to communicate with appellant and there is no indication in the record that appellant's appearance or demeanor during the trial was out of the ordinary.

We cannot conclude that evidence of the appellant's *present* incompetence became sufficiently manifest during the trial on the merits that the trial judge was required, sua sponte, to halt the proceedings and conduct a separate hearing on appellant's competency to stand trial. See *Eastham v. State,* 599 S.W.2d 624 (Tex.Cr.App.1980); *Ex parte McWilliams v. State,* 634 S.W.2d 815 (Tex.Cr.App.1980); *Hawkins v. State,* 628 S.W.2d 71 (Tex.Cr.App.1982); *Johnson v. State,* 564 S.W.2d 707 (Tex.Cr.App.1977) (opinion on State's Motion for Rehearing); *Ainsworth v. State,* 493 S.W.2d 517 (Tex.Cr. App.1973).

Appellant's ground of error is overruled.

The judgment of the trial court is affirmed.