NO. 07-00-0453-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 5, 2001

_____

WILLIAM HENRY CORDER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NO. 36,639-A; HONORABLE DAVID GLEASON, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Following his plea of not guilty, appellant William Henry Corder was convicted by a jury of murder and punishment was assessed at confinement for life. Presenting four points of error, appellant contends 1) the trial court erred in overruling his motion to suppress his confession; 2) the trial court erred in permitting a verdict to be rendered against him during his absence; 3) notwithstanding notice to the trial court that he had

attempted suicide during trial and had previously suffered psychological infirmities, the trial court encouraged his counsel to call him as a witness to testify that he had never been convicted of a felony, without first conducting a hearing to determine if there was evidence showing he should be evaluated as required by article 46.02, section 2(b) of the Texas Code of Criminal Procedure; and 4) he was denied effective assistance of counsel. Based on the rationale expressed herein, we affirm.

Although appellant does not challenge the sufficiency of the evidence to support his conviction, a summary of the events is essential for disposition of appellant's contentions. After James Swanson and Crystal Gayle Swanson, his 16-year-old wife and mother of their infant baby, separated in February 1996, Crystal and the baby moved in with friends. During this time, James took the baby for a one-day visit, but later refused to return the baby to Crystal and filed for divorce. In that proceeding, Crystal was awarded temporary custody of the baby and moved in with her in-laws, Orville and Kathy Swanson in Amarillo. On March 28, 1996, according to Orville, James and Crystal were at his house, but left the house for about two hours to take Crystal to the hospital; they returned later. When Orville went to work early the next morning, he thought that Crystal was on the couch, but never saw her again.

When Crystal missed a scheduled appointment on March 28, 1996, for child care counseling, Johnna Campbell, a nurse who had been providing counseling to Crystal, became concerned. Knowing that a divorce was pending, Campbell called the police and

2

reported Crystal missing after James called her on March 29 and asked if she knew Crystal's whereabouts. Officers discovered Crystal's body on April 23, 1996, in a shallow grave on a farm located in Donley County and owned by Frank and Vivian Corder, appellant's grandparents.

By his first issue, appellant contends the trial court erred in overruling his written pretrial motion to suppress his confession. By his written motion, among other things, appellant contended that his statement was involuntary, coerced, and/or enticed, and that he was deprived of the right to counsel and did not intelligently understand and knowingly waive any right to counsel affirmed by the Constitutions of the United States and the State of Texas. We disagree.

Before jury selection, the trial court heard appellant's motion to suppress. Officers Mark Brown and Ron Hudson were called by the State as witnesses and Dr. Preston Shaw, a physician and psychiatrist, was called by appellant. Neither appellant nor his mother, who had been present when appellant gave his statement, were called to testify at the hearing. Brown testified that after he told appellant's mother that if necessary, he would get a grand jury subpoena to interview appellant, appellant voluntarily came to the police station to be interviewed on April 22. At the time of this interview, appellant was regarded only as a witness. Thereafter, Brown focused the investigation on the farm in Donley County. On April 25, Brown and Hudson traveled to the farm and the investigation concluded with the location of Crystal's body.

3

When Brown and Hudson returned to Amarillo, they contacted Orville and Kathy Swanson. Kathy and appellant's brother were transported to the police station by officers and appellant drove himself to the police station later that evening. Appellant was interviewed by Hudson, and Brown occasionally monitored the interview from an adjoining room. Brown confirmed that appellant was warned of his constitutional rights and that it appeared to him that appellant understood the warnings. Appellant did not invoke any of the rights explained to him. Before confessing on tape, he was allowed to visit with his mother, who was present when he gave his statement.

Hudson likewise testified that appellant was read his rights and that he appeared to understand them. Appellant told Hudson that he had some college education. During the interview, Hudson asked for and received appellant's consent to search his pickup, which he had driven to the police station. According to Hudson, during the interview, appellant was permitted to speak with relatives and Hudson periodically left the room to allow appellant time to "think." Appellant consented to the taking of hair samples, photographs, and fingerprints. For about 20 minutes he spoke with his mother, who offered to call an attorney, but appellant declined. Hudson also testified that appellant's mother told him it would "look better" if he told the truth. Appellant was provided a soft drink and then gave his statement. After Hudson again advised appellant of his rights, he commenced giving his taped statement. Hudson denied that he threatened to arrest any member of appellant's family or withhold necessities, such as drinks and restroom facilities.

Doctor Shaw, the only witness called by the defense, testified that he examined and interviewed appellant for about two hours on September 23, 1997, and performed objective oral tests, but did not administer any written tests. Doctor Shaw focused on appellant's psychological or personality traits which might make him more vulnerable to duress. He described appellant as a "dependent personality" and indicated that it would render him more likely to respond to pressure in a manner inclined to please the people interrogating him. Although Dr. Shaw testified that in his opinion, the confession "could have been" involuntary, he could not testify that it was involuntary because he was not present when the recording was made, and was at a "disadvantage because of not being present but on one occasion."

In reviewing an appeal from the trial court's denial of a motion to suppress, great deference is afforded to the trial court's decision on mixed questions of law and fact that turn on an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89 (Tex.Cr.App. 1997). The evidence at the hearing focused only on the question of whether appellant's statement was voluntary. Doctor Shaw expressed his opinion that the confession could have been involuntary; however, he was unable to describe the statement as such. On the other hand, the testimony of the two officers did not indicate circumstances rendering the confession involuntary. In fact, Officer Hudson permitted appellant to visit with relatives and left the interrogation room so appellant could "think." Further, his mother was allowed to remain in the room while he gave his statement. There was evidence that appellant had some college hours and that he voluntarily came to the

police station. Under these circumstances we cannot hold that the trial court abused its discretion in overruling appellant's motion to suppress.[1] Appellant's first point is overruled.

By his second point, appellant contends the trial court committed reversible error when it allowed the jury to render its verdict in his absence, contrary to articles 33.03 and 37.06 of the Code of Criminal Procedure.[2] We disagree. After the jury retired at 5:13 p.m. to deliberate on guilt-innocence, the court was advised that appellant had attempted to commit suicide by cutting his wrists. The court reported the attempted suicide to counsel and also announced that appellant's bond would be revoked and he would be placed in custody following his release from the emergency room. At this time, the jury also informed the bailiff a verdict had been reached. The court made the following suggestion:

> Therefore, what I suggest, gentlemen, is that we receive the verdict in the absence of the Defendant, but that we then recess and reconvene tomorrow afternoon for the punishment phase, if this is a guilty verdict. By then, the Defendant, Mr. Corder, should be back in our midst. Is there any objection to this procedure?

Neither side objected and the jury was seated at 9:55 p.m. and a guilty verdict was received.

---

[1]By written findings of fact, the trial court found that (1) at the time appellant gave the statement, he was not in custody, and being a non-custodial interrogation the statements made by appellant were admissible, and (2) even if appellant was in custody, he freely and voluntarily waived his constitutional rights and gave his statement in compliance with the Texas Code of Criminal Procedure.

[2]Tex. Code Crim. Proc. Ann. art. 33.03 (Vernon 1989), and Tex. Code Crim. Proc. Ann. art. 37.06 (Vernon 1981).

6

Article 37.06 expressly provides that a defendant's presence is not essential if his absence is wilful or voluntary. Similarly, article 33.03 eliminates the requirement of defendant's presence where the defendant voluntarily absents himself after pleading to the indictment. In Bottom v. State, 860 S.W.2d 266, 267 (Tex.App.--Fort Worth 1993, no pet.), Bottom's absence resulted from his attempt to harm himself by ingesting large quantities of aspirin and other medication. The court of appeals held that his absence was voluntary and proceeding to trial in his absence was not error. Also, in Valadez v. State, 979 S.W.2d 18, 20 (Tex.App.--Houston [14th Dist.] 1998, pet ref'd), the court held that a defendant's absence from a motion hearing was not reversible error because Valadez did not demonstrate any harm resulting from the alleged error.

Here, while on bond, appellant voluntarily left the courtroom and attempted to commit suicide, thereby requiring medical treatment at the emergency room of a local hospital. Although he was not hospitalized, when the jury returned to announce its verdict, appellant had not yet returned to the courtroom. Appellant's absence was not due to a sudden unexpected medical emergency. Rather, because he chose to intentionally absent himself from trial, he waived his right to be present when the verdict was received. *See* Gonzalez v. State, 515 S.W.2d 920, 921 (Tex.Cr.App. 1974). Further, appellant's counsel did not object to the trial court's suggestion to receive the verdict in appellant's absence. Thus, appellant's second point of error is overruled.

7

By his third point of error, appellant contends the trial court erred in not conducting a hearing out of the jury's presence to determine whether there was evidence to support a finding of incompetency to stand trial. We disagree. Although appellant did not testify at the suppression hearing, he did testify during both phases of the trial. He acknowledged that he had completed correction officer and police officer courses at Amarillo College and was taking other courses. Otherwise, he testified that his taped statement was incorrect, and that he made the false confession because he was afraid that some of his family members would be charged. Although he testified about some mental evaluations years before, Dr. Shaw's testimony at the suppression hearing was before the trial court and could be considered.

Article 46.02, section 2(b) of the Texas Code of Criminal Procedure provides that:

> If during the trial evidence of the defendant's incompetency to stand trial is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial.

However, article 46.02, section 1A(b) provides that a person is presumed competent to stand trial unless proved incompetent by a preponderance of the evidence. *See also* Martinez v. State, 867 S.W.2d 30, 33 (Tex.Cr.App. 1993), *cert. denied*, 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed. 2d 879 (1994) (recognizing the presumption of sanity). The test of competency is whether the appellant had sufficient ability to consult with his attorney with a reasonable degree of rational understanding and had a rational as well as factual

8

understanding of the proceedings against him.  Loftin v. State, 660 S.W.2d 543, 545-46 (Tex.Cr.App. 1983).  According to Moore v. State, 999 S.W.2d 385, 393 (Tex.Cr.App. 1999), *cert. denied*, 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000), in determining whether evidence requires a separate jury to conduct a competency hearing, the trial court is to consider only the evidence tending to show incompetency and a competency hearing is not required unless the evidence is sufficient to create a bona fide doubt in the mind of the judge whether the defendant meets the test of legal competency. Further, on appeal, the standard of review is whether the trial court abused its discretion. *Id*. at 393; *see also* Boling v. State, 617 S.W.2d 241, 242 (Tex.Cr.App. 1981).

Appellant contends that his attempted suicide, together with the testimony of Dr. Shaw was sufficient to require the trial court to conduct a hearing under article 46.02, section 2(b); however, the test is not whether appellant was mentally unstable but, as stated in *Loftin*, 660 S.W.2d at 545-46, whether appellant had sufficient ability at the time of trial to consult with counsel with a reasonable degree of rational understanding and had a rational as well as factual understanding of the proceedings.  Considering the presumption of competency, appellant's testimony at trial, and the testimony of his expert at the suppression hearing, we conclude the trial court did not abuse its discretion. Appellant's third point of error is overruled.

By his fourth point of error, appellant contends that his retained counsel rendered ineffective assistance of counsel contrary to his rights under the Sixth and Fourteenth

9

Amendments to the United States Constitution and Article I, Section 10 of the Texas Constitution. We disagree. As discussed in our analysis of appellant's first point, after appellant declined his mother's suggestion to call an attorney, he gave an oral statement confessing to the murder on April 25, 1996. He was taken before a magistrate the next day and was released on bond. Trial counsel entered an appearance on July 26, 1996, and made arrangements for Dr. Shaw to examine appellant in August 1997. Based on his testimony, counsel filed a motion to suppress appellant's statement.

Appellant contends trial counsel was ineffective because he failed to:

1. object to the prosecutor's remarks during jury selection about the 5th amendment right to silence and the presumption of innocence;

2. present his expert witness as a defense witness during trial to lend credence to the defensive theory that his confession was not voluntary;

3. emphasize that he had little motive to kill Crystal and that his brother and mother had stronger motives;

4. request a continuance or psychological examination after his suicide attempt;

5. object to the trial court's receiving the jury verdict on guilt innocence in his absence;

6. request a poll of the jury after the verdict was received; and

condemned counsel for agreeing with the prosecutor's argument during the punishment phase that he dumped her body "like trash."

10

We must review the ineffective assistance of counsel claim by the standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[3] Under *Strickland*, a defendant must establish that (1) counsel's performance was deficient (*i.e.*, fell below an objective standard of reasonableness), and (2) there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different, a reasonable probability being a probability sufficient to undermine confidence in the outcome. Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Cr.App. 1986).

The adequacy of defense counsel's assistance is based upon the totality of the representation rather than by isolated acts or omissions of trial counsel. Garcia v. State, 887 S.W.2d 862, 880 (Tex.Cr.App. 1994), *cert. denied*, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). Although the constitutional right to counsel ensures the right to reasonably effective counsel, it does not guarantee errorless counsel whose competency or accuracy of representation is to be judged by hindsight. Ingham v. State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984); *see also* Ex Parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App. 1993). A strong presumption exists that defense counsel's conduct falls within a wide range of reasonable representation. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2064, 80 L.Ed.2d at 695; Dewberry v. State, 4 S.W.3d 735, 757 (Tex.Cr.App. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). To sustain a challenge of

---

[3]The Court of Criminal Appeals has overruled both Ex parte Duffy, 607 S.W.2d 507, 516 (Tex.Cr.App. 1980) and Ex parte Cruz, 739 S.W.2d 53 (Tex.Cr.App. 1987) by its decision in Hernandez v. State, 988 S.W.2d 770 (Tex.Cr.App. 1999).

ineffective assistance, it must be firmly founded in the record, Mercado v. State, 615 S.W.2d 225, 228 (Tex.Cr.App. 1981), and the defendant must overcome the presumption that counsel's conduct might be considered sound trial strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex.Cr.App. 1994). After proving error, a defendant must also affirmatively demonstrate prejudice. *Garcia*, 887 S.W.2d at 880. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Id*.

Notwithstanding the facts that appellant (1) had completed correctional officer and law enforcement courses at Amarillo College, (2) had declined his mother's offer to call an attorney, and (3) had given the police a taped confession before trial counsel was engaged, appellant now contends that trial counsel was ineffective. Formulation of a credible defense under these circumstances is indeed challenging and requires counsel to be creative. Based on this record, it is apparent that counsel's first objective was to attack the confession; however, once the trial court overruled the motion to suppress, successful defense prospects quite obviously diminished.

Regarding appellant's first complaint, we note that commenting during *voir dire* on the right not to testify before that right has been invoked is not error. *See* Campos v. State, 589 S.W.2d 424, 426 (Tex.Cr.App. 1979). Next, counsel agreed that his expert witness could be released after the suppression hearing presumably based on his knowledge of the expert's testimony on cross-examination before the jury on other matters, and also in

accordance with fee agreement with the expert witness. Also, a defense based on the contention that appellant's mother and brother were more likely candidates for prosecution is not credible based upon his confession. Counsel's failure to request a continuance or psychological examination after the suicide attempt would not have been productive as discussed in our analysis of appellant's third point of error. Similarly, receipt of the jury's verdict in appellant's absence was not error under these circumstances and failure to poll the jury under this record did not constitute error.

Viewing appellant's complaints not as isolated acts, but in the context of the entire record, we are not convinced that appellant has satisfied his burden to demonstrate that his defense counsel was ineffective. Bridge v. State, 726 S.W.2d 558, 571 (Tex.Cr.App. 1986). Appellant had the burden to develop facts and details necessary to show that but for counsel's failures, the outcome of the proceeding would have been different. On direct appeal, evidence necessary to support an ineffective assistance claim is usually not established by the record. Indeed, in most instances, where a claim of ineffective assistance is raised, the record on direct appeal is normally not in condition to reflect the failings of trial counsel or to demonstrate prejudice. See Jackson v. State, 973 S.W.2d 954, 957 (Tex.Cr.App 1998). Point of error four is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.

13