

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00568-CR

Vicente **LOPEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CR-6974
The Honorable Angus McGinty, Judge Presiding

Opinion by:  Rebeca C. Martinez, Justice

Sitting:  Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  December 11, 2013

AFFIRMED

Vincente Lopez appeals his conviction for retaliation, asserting he was incompetent to stand trial.  We affirm the trial court's judgment.

### BACKGROUND AND PROCEDURAL HISTORY

In July 2010, Lopez was charged with retaliation arising out of verbal statements he made threatening to shoot San Antonio Police Officer Brian Bigler because of the officer's previous arrest and emergency detention of Lopez.  *See* TEX. PENAL CODE ANN. § 36.06(a)(1)(A) (West 2011).

In February 2011, counsel for Lopez filed a motion requesting that Lopez's competence to stand trial be evaluated. The matter was referred to a criminal magistrate judge, who granted the motion and ordered a mental health expert to perform a psychological evaluation on Lopez. The report dated July 6, 2011 found Lopez competent to be tried on the retaliation charge.[1] At a brief hearing, defense counsel and the State agreed that, based on the report, Lopez was competent, and the criminal magistrate judge found Lopez competent to stand trial.

By the time Lopez's case proceeded to trial on June 25, 2012, he had retained new counsel. A few days before trial, the court denied Lopez's request to fire his attorney and have a new attorney appointed. Before jury selection began on the first day of trial, Lopez's attorney informed the court that Lopez was refusing to talk to him, refused to fill out the election of punishment form and apply for probation (for which he was eligible), refused to dress for trial, and had urinated on himself. Counsel stated Lopez was not assisting in his defense, and was acting in an irrational manner that was contrary to his best interests. Based on Lopez's behavior that day, counsel stated he had no choice but to ask the court for a brief continuance so that an emergency evaluation of Lopez's competence could be performed, noting that approximately one year had passed since his prior psychological evaluation. Counsel also moved to withdraw, stating he could not provide effective assistance if Lopez was not willing to communicate with him. The trial court denied counsel's motion to withdraw, noting that the attorney was a very experienced criminal defense attorney whom Lopez had chosen to hire, and that Lopez had already made one change of counsel during the pendency of his case which had been set for trial twelve times. The court also denied defense counsel's motion for a continuance and request for another competency evaluation, explaining,

---

[1] The competency report is not included in the appellate record.

Each time Mr. Lopez has come to court, he appears to talk when he wants on whatever subject he wants to talk to - - talk about with little or no regard to the direction that I'm giving him; nevertheless, I have not seen anything in his conduct to find that he is incompetent or displaying symptoms of incompetence. Moreover, in July of last year, he had a complete competency evaluation and he was found competent, as was ruled on by Judge Carruthers.

I believe Mr. Lopez's antics today in urinating on himself, refusing to get dressed, and not talking with [his attorney] is merely an attempt to delay the proceedings and we're not going to do that. We're going to go to trial today. So, the defense's request for a continuance is denied. What I'm going to do is admonish Mr. Lopez.

The court proceeded to admonish Lopez that the trial was going to proceed and that he would be permitted to remain in the courtroom for jury selection as long as he refrained from speaking out and spoke only when addressed by the court. Even though Lopez stated that he understood, he continued speaking in Spanish and the judge ordered him removed from the courtroom during jury selection. Lopez was present during the rest of his trial, but continued occasionally speaking out loud in Spanish as well as English during the proceedings. Lopez had a Spanish interpreter throughout the trial, but also spoke in English at times.

The evidence at trial showed that on the evening of April 7, 2010, a neighbor called the police about Lopez being intoxicated and threatening him with a shovel. When the officers arrived, they detained Lopez and placed him inside a patrol car. Upon seeing Officer Brian Bigler, Lopez asked Bigler whether he was the officer who arrested him (Lopez) and took him to the hospital. When Bigler replied, "yes," Lopez became upset and began banging his head against the patrol car window. Officer Lee Biegert removed Lopez from the patrol car and placed him on the ground to gain control of him. After Lopez calmed down, Biegert allowed him to stand up. According to Biegert, Lopez looked Officer Bigler in the eye and said, "I'll shoot you, I'll - - you'll f**king pay." Biegert exclaimed that Lopez's statement was "retaliation" and that Lopez could be charged.

Lopez later said he had threatened "to sue," not "shoot," Officer Bigler. Biegert testified that Lopez understood everything that was said to him in English, and replied in English, that night.

Officer Mike Cockerham testified that he had been called out to Lopez's house more than twenty times for disturbances. Cockerham stated he never had any trouble communicating with Lopez in English. On the night of April 7, 2010, Cockerham heard Lopez say to Bigler, "I'm going to kill you, you're going to f**king pay for what you did." Cockerham also recalled Lopez saying "I'm going to shoot you." Lopez's demeanor was angry at the time. The officers discussed that Lopez's statements constituted the offense of retaliation and that Lopez could be charged. Lopez overheard, and began telling them, "that's not what I said, I said I was going to sue him." Cockerham testified to his opinion that Lopez is very smart and knows how far he can push things with the police.

Officer Bigler testified that he had several previous encounters with Lopez before the April 7, 2010 retaliation incident. About eight months before, in August 2009, Bigler was called to Lopez's residence because Lopez was arguing with his neighbor. Bigler conducted an emergency detention, arresting Lopez and taking him to the hospital because he believed Lopez was "suffering from a mental health crisis" at that time. Bigler stated Lopez's demeanor that night ranged from excitable to calm, and that he was having random thoughts, asking Bigler to shoot him and then stating Bigler was going to be blessed by God. Lopez did not appear to be in a stable state of mind. After that arrest, Lopez wrote Bigler's name and badge number on the inside of his white picket fence with a permanent marker. On the night of April 7, 2010, Bigler heard Lopez yell at him that he (Bigler) was "going to f**king pay," and also said he was either going to "shoot" him or "sue" him — Bigler was not certain which word Lopez used because Lopez has a strong Spanish accent. Bigler stated he had always communicated with Lopez in English. In Bigler's opinion, Lopez was

not mentally unstable on that night. Bigler explained that Lopez was not exhibiting the severe emotional highs and lows like he was eight months before.

A neighbor also testified to the ongoing conflicts he and his family experienced with Lopez over the last several years. The neighbor stated that Lopez was often drunk and antagonistic toward his neighbors. He testified to calling the police several times due to conflicts with Lopez.

Against his attorney's advice, Lopez testified in his own defense. Lopez denied ever threatening to shoot Officer Bigler, explaining that he had thought of suing Bigler but had since changed his mind because he seemed like a nice guy, could be his son due to his age, and reminded him of his nephew who was in law enforcement. When asked about the previous calls to police by his neighbors, Lopez testified he had never threatened anyone, including any of his neighbors, because that was against his principles. He stated, "[t]he people around me, they never make sues against me. They're friends. They're friends from my mother. My lovely mother." During his testimony, Lopez generally spoke in Spanish with an interpreter, but often spoke over the interpreter or continued speaking beyond what the interpreter translated as his answer; he also sometimes spoke in English.

The jury found Lopez guilty of retaliation against Officer Bigler, and he was sentenced to five years' imprisonment. Lopez now appeals.

**ANALYSIS**

On appeal, Lopez raises two related issues regarding his competency, arguing that: (1) the trial court erred in denying his counsel's request for a continuance to obtain a second competency evaluation; and (2) the trial court violated Lopez's due process rights by failing to *sua sponte* conduct an informal inquiry into Lopez's competency at the beginning of or during trial.

Due process requires that, in order to be competent to stand trial, a criminal defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational

understanding" and must have a "rational as well as factual understanding of the proceedings against him." *Turner v. State*, No. AP-76580, ___ S.W.3d ___, 2013 WL 5808250, at *10 (Tex. Crim. App. Oct. 30, 2013) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)). This constitutional standard has been codified in Chapter 46B of the Texas Code of Criminal Procedure, which describes the circumstances that require a competency determination and details the procedures to be followed. TEX. CODE CRIM. PROC. ANN. arts. 46B.001—.171 (West 2006 & Supp. 2013). Under the code, a defendant is presumed competent to stand trial and shall be found competent unless proven incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (West 2006). A person is incompetent to stand trial if the person does not have "(1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a) (West 2006); *see Turner*, 2013 WL 5808250, at *6 n.11 (noting that a competent defendant possesses both criteria). This standard focuses on the defendant's present ability at the time of trial. *Montoya v. State*, 291 S.W.3d 420, 425 (Tex. Crim. App. 2009).

The issue of a defendant's competence may be raised by either party's motion or by the trial court on its own motion. TEX. CODE CRIM. PROC. ANN. art. 46B.004(a) (West Supp. 2013). "If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the trial court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(b) (West Supp. 2013). Upon a suggestion that the defendant may be incompetent, the trial court has a duty to conduct an informal inquiry to determine whether there is "some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(c) (West Supp. 2013). Relying on *Montoya*, the State argues that this evidentiary threshold of a "suggestion" of incompetency is the same as the "bona

fide doubt" threshold under the former version of article 4B.004(c). *See Montoya*, 291 S.W.3d at 425 (holding that evidence that a "suggestion" of incompetency sufficient to trigger an informal inquiry was the same as the "bona fide doubt" standard from the previous statutory scheme). That argument is refuted by the plain language of subsection (c–1), which was added to article 46B.004 by legislative amendment, effective September 1, 2011. TEX. CODE CRIM. PROC. ANN. art. 46B.004 (c–1) (West Supp. 2013). As the Court of Criminal Appeals noted in *Turner*, after its opinion in *Montoya*, the legislature expressly rejected the "bona fide doubt" standard by adopting subsection (c–1) which states, "A suggestion of incompetency is the threshold requirement for an informal inquiry under Subsection (c) and may consist solely of a representation from any credible source that the defendant may be incompetent. A further evidentiary showing is not required to initiate the inquiry, and the court is not required to have a bona fide doubt about the competency of the defendant." *Turner*, 2013 WL 5808250, at *11 n.32. Lopez's trial commenced in July 2012, well after the effective date of the amendment; therefore, the current version applies.

Here, Lopez argues the record contains at least a suggestion that he was incompetent to stand trial in that he did not have sufficient ability to consult with counsel and assist in his defense, and he did not understand the charge against him. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.003(a). Lopez contends that under article 46B.004(c), the trial court was required to conduct an informal inquiry into his competence during trial, and the court erred in denying his counsel's request for another competency evaluation at the beginning of trial.

With respect to a defendant's ability to consult with counsel, the "legislative criteria for competency contemplate a defendant who is at least minimally able to interact with his trial counsel in a 'reasonable and rational' way (even if they do not necessarily agree) in formulating decisions how most effectively to pursue his defense." *Turner*, 2013 WL 5808250, at *10. Article 46B.024 sets forth factors to be considered by an expert in making a competency assessment,

including the defendant's capacity to: "(A) rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings; (B) disclose to counsel pertinent facts, events, and states of mind; (C) engage in a reasoned choice of legal strategies and options; (D) understand the adversarial nature of criminal proceedings; (E) exhibit appropriate courtroom behavior; and (F) testify. . . ." TEX. CODE CRIM. PROC. ANN. art. 46B.024(1) (West Supp. 2013). Other considerations include the defendant's current indications of mental illness, his personal history of mental illness, whether the condition has lasted or is expected to last continuously for at least one year, the degree of impairment resulting from the mental illness and its specific impact on the defendant's capacity to rationally engage with counsel, and whether the defendant takes psychoactive or other medications and their effect on the defendant's appearance, demeanor and ability to participate in the proceedings. *Id.* art. 46B.024(2)-(5) (West Supp. 2013).

Here, a mental health expert was ordered to perform a psychological evaluation of Lopez's competency upon his attorney's suggestion, by motion, that he may be incompetent to stand trial. The expert's report found Lopez competent, defense counsel and the prosecutor agreed that he was competent, and the magistrate judge found him competent to stand trial. At that time, the trial court was under no duty to take any further action; however, the court was "effectively put on notice of the need to maintain vigilance to assure that the appellant's due process rights were preserved." *Turner*, 2013 WL 5808250, at *12. The question then becomes whether Lopez's actions and comments preceding and during trial amount to evidence "suggesting" he may have been incompetent to stand trial, thereby triggering the trial court's duty to make an informal inquiry into Lopez's competency at that time. *See* TEX. CODE CRIM. PROC. ANN. art. 46B.004(b), (c).

On the first day of trial, the record reflects that Lopez refused to cooperate — refusing to speak with his attorney, refusing to fill out the election of punishment form and the application for probation, refusing to change clothes for trial, and urinating on himself. The record also reflects

that Lopez sought to fire his attorney a few days before, and his request was denied by the court as a delay tactic. After defense counsel's request for a continuance for a competency examination was denied, Lopez appeared briefly in court and was admonished to behave and control his verbal outbursts. Even though Lopez stated he understood, he continued speaking out loud in Spanish, and the court ordered him removed during jury selection.

Once trial began, Lopez's cooperation with his attorney and the trial court improved—e.g., he dressed appropriately in a shirt and tie, more or less restrained his verbal outbursts and followed the court's instructions, and asked for time to consult with his attorney before making the decision to testify. While the record does show that Lopez disrupted the trial proceedings on several occasions by speaking out loud in Spanish, and sometimes in English, it also shows that he followed the instructions by the court and his attorney to stop talking on some occasions and followed the trial court's instructions regarding court proceedings, e.g., he rose for the reading of the indictment, stated his plea of "not guilty" when asked, and sat down when instructed to do so. After the State rested its case in chief and the jury was excused for the day, the trial court acknowledged on the record that Lopez had so far refrained from making outbursts during the trial. When the court instructed Lopez not to tell the jury "thank you" as they were leaving, Lopez stated in English that he was sorry and thanked the judge. Defense counsel did not re-state his complaint that Lopez was refusing to speak with, or cooperate with him, and did not renew his request for a further competency evaluation during the trial proceedings.

Most of Lopez's verbal outbursts were claims of innocence and assertions of his rights, or accusations that the State's witnesses were lying. For example, during closing arguments, Lopez became upset and stated out loud in English, "I've already had so many injustice. Fifteen months in here and I'm innocent . . . I'm trying to use my rights only . . . I don't need no more - - (talking loudly in Spanish)," and later stating in Spanish, "This is not a fair court. I'm going to sue you."

When he was permitted to address the court during the sentencing phase, Lopez stated, "I am legal Mexican resident and I have rights. And all - - and all I'm asking is that to exercise those rights . . . like today to get my fingerprints. They forced me to get my fingerprints . . . they grab me, they force me, and they put my hands like this (indicating) because I don't want to do this. I - - I am - - I am innocent 100 percent." At the end of the sentencing hearing, Lopez refused to agree to the court's proposed conditions of probation. The following exchange occurred:

> THE COURT: Mr. Lopez. Mr. Lopez. You heard what I told you about conditions of probation. Are you going to agree?
>
> THE DEFENDANT: If - - if I was guilty about this, even if it was a little bit, I would be very grateful. (Defendant continuing to speak in Spanish).
>
> THE COURT: So are you going to agree to the conditions of probation or not?
>
> THE DEFENDANT: I am innocent 100 percent and that is dishonesty.
>
> THE COURT: Are you going to agree to the conditions of probation or not?
>
> THE DEFENDANT: No, I ain't - - I ain't going to take probation. I'm innocent 100 percent.

In addition, the fact that Lopez chose to testify during the guilt/innocence phase against his attorney's advice is not evidence of mental incompetence rather than mere disagreement with his attorney. Lopez consistently expressed his desire to tell his side of the story throughout the proceedings. In addition, defense counsel questioned Lopez outside the jury's presence about their discussion concerning his right not to testify, and Lopez acknowledged the discussion. In fact, Lopez asked to further consult with his attorney before making the final decision to testify. Lopez acknowledged his right not to testify and expressed his desire to tell the jury his version of events, stating the State's version was "pure lies." After deciding to testify, Lopez raised his hand to be sworn as instructed by the judge, and responded lucidly to his attorney's questions on direct examination and the prosecutor's questions on cross-examination. Lopez knew his age, his address

and how long he has lived there, that he is a legal resident, and that he had very little formal education. Lopez denied that he threatened to shoot Officer Bigler and stated that he instead threatened to sue Bigler, which was consistent with what he later told the officers at the scene that day. Lopez agreed there is a big difference between saying, "I'll shoot you" and "I'll sue you." Lopez gave some rambling testimony and some contradictory testimony about how many times he had seen Bigler and his badge number, and also claimed not to recall his prior arrests, although he did remember he was placed on probation for a DWI offense. Lopez, who mostly answered in Spanish, often began answering before the question was fully translated, and often continued talking after the interpreter started translating his answer, creating some confusion which is evident in the record. As evidence of mental impairment, Lopez cites us to his complaint to the court during the sentencing phase that he was "never allowed to testify." But, viewing that comment in the context of Lopez's comments made just prior to his testimony, it is clear that Lopez was referring to his desire to give a "speech" to the jury. In addition, Lopez asserts he did not understand he was charged with retaliation against Officer Bigler, citing us to comments he made about retaliation by and against his neighbor. The indictment initially contained another count charging Lopez with retaliation by threatening to kill his neighbor, but the State dropped that count prior to trial.

In sum, while there is evidence that Lopez refused to cooperate with his attorney prior to trial, and sometimes interrupted the proceedings by speaking out loud, and sometimes failed to follow instructions, nothing in the record supports a rational inference that his conduct was "fueled by mental illness" or was "a product of mental illness" rather than mere obstinacy. *See Turner*, 2013 WL 5808250, at *13. The sole evidence of mental illness was Lopez's hospitalization in 2009, three years before trial. There was no evidence that he currently suffered from a mental illness or that he was taking psychoactive or other medications at the time of trial. Neither a

defendant's mental illness nor his refusal to cooperate with counsel, by itself, means a defendant is incompetent for trial. *Id.* at \*11. "Indeed, even a mentally ill defendant who resists cooperating with his counsel may nevertheless be found competent if the manifestations of his particular mental illness are not shown to be the engine of his obstinacy." *Id.* (citing *Loftin v. State*, 660 S.W.2d 543, 546-47 (Tex. Crim. App. 1983)). Viewed in the context of the entire record, Lopez's behavior immediately before and during trial did not raise a suggestion that mental illness was preventing him from rationally understanding the proceedings or engaging rationally with his counsel, and thus did not trigger the need for an informal inquiry into his competency, or further psychological evaluation by an expert. *See Turner*, 2013 WL 5808250, at \*11. Accordingly, we overrule Lopez's issues on appeal and affirm the trial court's judgment.

Rebeca C. Martinez, Justice

Do not publish