**David Wayne BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 13–92–398–CR, 13–92–401– CR and 13–92–402–CR.**

Court of Appeals of Texas, Corpus Christi.

Feb. 3, 1994.

Rehearing Overruled March 24, 1994.

A. Jay Condie, Pachta and Heinold, Victoria, for appellant.

Robert E. Bell, Crim. Dist. Atty., Edna, Jim Vollers, Austin, for appellee.

Before SEERDEN, C.J., and GILBERTO HINOJOSA and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellant, David Wayne Brown, twenty-nine years old, was convicted of three counts of indecency with a child. With five enhancement paragraphs, the jury assessed punishment at eighty (80) years of confinement in the Institutional Division of the Department of Criminal Justice. The three convictions have been consolidated for the purpose of this appeal. Appellant challenges the trial court's judgment by three points of error. We abate this appeal and remand this cause to the trial court to hold a retrospective competency hearing pursuant to Article 46.02 § 2 of the Texas Code of Criminal Procedure.

Two of the incidents for which appellant was indicted occurred with "A," appellant's step-daughter. One occurred at the Texana Apartments in April 1990 in Edna, Texas, and the other occurred later that summer at the farm where they lived. The third incident also occurred that summer at the farm, but with "B," appellant's younger step-daughter. "A" was born June 6, 1979, and so was approximately eleven-years-old when she lived at the Texana Apartments, and she was thirteen-years-old at the time of trial in June 1992. "B" was born November 11, 1980, and so was approximately nine-years-old when she lived at the farm. Both girls were under the age of fourteen when the alleged offenses occurred.

"A" testified at trial, but "B" did not. With respect to the events at the Texana Apartments, "A" testified that appellant rubbed her vagina and breasts over her clothes and ordered her to grab his "private parts." She described another incident in which she awoke and appellant was rubbing her while she lay in her bed. She said that appellant touched or rubbed her in this manner two or three more times while they lived at the Texana Apartments.

"A" also testified about the events occurring on the farm. She said that the family moved to a farm in the country the summer after they lived at the Texana Apartments. One morning at 6:30 a.m. she walked into the room where "B" had been sleeping and saw appellant kneeling over her and rubbing her vagina. "A" said that on the same day she saw appellant rubbing "B," appellant also fondled her while on the tractor appellant was driving. He put his hands down her shirt and under her panties and touched her breasts and vagina. She said that, later, appellant carried her piggy back and again reached under her panties and touched her.

"A" testified that, when she arrived home, her mother, Mary, said that "B" had complained that appellant had touched her "private parts" that morning. Her mother asked "A" whether appellant had also touched her. "A" replied that he had and she described to her mother the incidents on the tractor and when appellant carried her piggy back.

Mary also testified at trial. She said that she first learned of appellant's conduct the morning "B" told her about what he had

done to her. She said "A" affirmed that afternoon that appellant had touched her on the tractor as well as when he gave her a piggy back ride. She confronted appellant, who said the girls were lying.

Two letters from appellant to Mary were introduced into evidence while Mary was on the stand. Mary identified the handwriting in the letters as appellant's. In the first letter, written in November and December 1991, appellant alluded to the accusations against him with respect to "B." He wrote, "Dear, I finally figured out why I did do that to ['B'], O.K." Later in the letter, he wrote, "I touched your daughter. So, now there [sic] gonna touch me." In the second letter, written in December, appellant made explicit reference to having had sexual contact with both of the girls, but maintained at all times that they gave him permission to touch them.

Additional evidence of appellant's guilt was introduced into trial. Appellant gave a tape recorded statement on December 9, 1991, to two officers of the Jackson County Sheriff's Office and to Bobby Bell, the prosecutor in this case. Appellant's attorney was not present, and the tape recording indicates that he was read his constitutional rights and waived them. In the statement, appellant describes the incidents of sexual contact with "A" and with "B" for which he was charged as well as many more similar incidents. He explains in the tape that he touched both "A" and "B" on the breasts and the vagina, but that it was "by their permission," and that he never penetrated them.

The jury also heard appellant's grand jury testimony, in which appellant went to great length to explain the reason he had "confessed" to the police, the social worker and his wife. Initially, he said, he thought he would get probation if he told the authorities what they wanted to hear. He said he also did not want to put the girls through the ordeal of trial.

The first issue to address is the sufficiency of the evidence to support a conviction for three counts of indecency with a child. Appellant argues that the evidence was insuffi-

cient to support his conviction because Article 38.07 of the Texas Code of Criminal Procedure excludes from evidence "A's" uncorroborated testimony, and because Rule 803(24) of the Texas Rules of Criminal Evidence excludes from evidence appellant's uncorroborated statements against interest.

Article 38.07 of the Code requires corroboration of a sexual assault victim's testimony if the victim failed to inform another person of the incident within six months after the date of the alleged offense *and* if the victim is fourteen years old or older at the time of the alleged offense. TEX.CODE CRIM.PROC.ANN. art. 38.07 (Vernon Supp.1993); *see also Jones v. State*, 789 S.W.2d 330, 331 (Tex.App.— Houston [14th Dist.] 1990, pet. ref'd). Since both the victims in this case were under the age of fourteen, Article 38.07 is inapplicable to this case.

■ Turning to appellant's claim that his statements against interest were uncorroborated, Rule 803(24) provides that a "statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." TEX. R.CRIM.EVID.ANN. 803(24) (Vernon Supp. 1993). In order to preserve a complaint for appellate review, a party must make a timely objection. TEX.R.APP.P. 52(a). However, even unobjected-to hearsay is considered in a sufficiency analysis. TEX.R.CRIM.EVID. 802; *Fernandez v. State*, 805 S.W.2d 451, 454 (Tex.Crim.App.1991); *Ybarra v. State*, 855 S.W.2d 166, 168 (Tex.App.—Corpus Christi 1993, no pet.).

We identify the two primary statements exposing appellant to criminal liability as the second letter written to Mary (appellant's wife) and the statement given to law officials on December 9, 1991. In both the letter and the statement, appellant "confesses" to have engaged in the acts of which he is accused and also confesses many other similar incidents. Appellant objected to the admission of these statements on various grounds, including relevancy, privacy, and that the content was privileged matter. He did not ob-

ject pursuant to Rule 803(24) that the statements were not corroborated.

■ Initially, we observe that since appellant failed to object on the grounds that appellant's statements were not corroborated, he has failed to preserve error for appellate review pursuant to TEX.R.APP.P. 52(a). Furthermore, we observe that appellant's statements against interest were corroborated by "A's" testimony, and so the requirement of TEX.R.CRIM.EVID. 803(24) was satisfied. Finally, even if appellant's statements had not been corroborated by "A's" testimony, unobjected to hearsay is given probative value in a sufficiency analysis. TEX.R.CRIM. EVID. 802; *Fernandez*, 805 S.W.2d at 454; *Ybarra*, 855 S.W.2d at 168.

■ Having determined that "A's" testimony and appellant's statements were properly admitted into evidence, we now consider the sufficiency of the evidence to support appellant's conviction. A reviewing court addressing the sufficiency of the evidence must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Vuong v. State*, 830 S.W.2d 929, 933 (Tex.Crim.App. 1992). Appellant was indicted for intentionally and knowingly engaging in sexual contact with "A" and "B" with intent to arouse and gratify his sexual desire. The testimony of "A" and Mary, combined with appellant's letters and statements, more than support the jury's finding that appellant touched the breasts and vagina of "A" and "B." From this testimony, the jury could have inferred that appellant touched the victims to gain sexual gratification. Appellant's first point of error is overruled.

Appellant also argues that he received ineffective assistance of counsel. To establish an ineffectiveness claim, a defendant must show:

1) that counsel's representation fell below an objective standard of reasonableness, and 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; with that reasonable probability being a probability sufficient to undermine confidence in the outcome.

*Miniel v. State*, 831 S.W.2d 310, 323 (Tex. Crim.App.1992). The right to counsel does not afford a defendant errorless counsel whose competency is judged by hindsight. *Id.* (citing *Stafford v. State*, 813 S.W.2d 503, 506 (Tex.Crim.App.1991)). "Counsel's competence is presumed and a defendant must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Miniel*, 831 S.W.2d at 323 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 2587, 91 L.Ed.2d 305 (1986)). The defendant must overcome the presumption that, "under the circumstances, the challenged action might be considered sound trial strategy." *Miniel*, 831 S.W.2d at 323 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Appellant first complains that his trial counsel failed to record voir dire. We initially observe that appellant has failed to bring before this Court any particular "inflammatory" or "prejudicial" statements made by the prosecutor. We have no way of determining, therefore, whether, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Miniel*, 831 S.W.2d at 323.

■ Next, appellant complains that his trial counsel failed to cross-examine "A." Appellant, however, has not suggested any areas of cross-examination that would have been particularly helpful to impeach "A." Moreover, the decision not to cross-examine a witness is frequently the result of wisdom acquired by experience in the combat of trial. *Id.* at 324 (quoting *Coble v. State*, 501 S.W.2d 344, 346 (Tex.Crim.App.1973)). In light of the totality of trial counsel's representation, including cross-examining "A's" mother and a court-appointed psychiatrist, counsel's treatment of "A" is not outside the prevailing norm of sound trial strategy.

We now turn to appellant's claim that he received ineffective assistance of counsel because his trial counsel did not object to the testimony that appellant beat his wife, and because he did not object to the introduction of harmful portions of appellant's grand jury testimony. Specifically, "A" testified that she did not immediately tell anyone about appellant's conduct because she was afraid he would beat her mother. "A's" mother testified that appellant beat her on numerous occasions. Appellant's counsel made no objection to this inflammatory testimony. Appellant's counsel also failed to object to the introduction of appellant's grand jury testimony. The grand jury tape contains dialogue between appellant and a grand juror in which they discuss his prior criminal record, thus permitting the jury to hear about appellant's status as a habitual offender before the punishment phase. Throughout the grand jury testimony, appellant denied having committed the crimes charged against him and attempted to explain away his prior confessions.

We are inclined to hold that these representations "[fall] below an objective standard of reasonableness." *Miniel,* 831 S.W.2d at 323. However, we cannot hold that there is a reasonable probability that counsel's unprofessional errors suffice to undermine confidence in the outcome. *Id.* "A's" and Mary's testimony, the letters from appellant to Mary and the statements appellant gave to law officials were more than enough to find appellant guilty of the charged offense beyond a reasonable doubt. Appellant's third point of error is overruled.

■ The final issue to address is whether the trial court failed to comply with Article 46.02 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM.PROC.ANN. art. 46.02 (Vernon 1979 and Vernon Supp.1993). Appellant argues that sufficient evidence of his incompetency to stand trial was before the trial judge before and during trial such that the trial judge erred in failing to order, on its own motion, a hearing to determine competency.

A pretrial hearing was held January 3, 1992. On its own motion the trial court ordered, pursuant to Article 46.02 § 3 of the Texas Code of Criminal Procedure, that appellant undergo an examination by a disinterested expert in the mental health field to ascertain whether he was competent to stand trial. *See* TEX.CODE CRIM.PROC.ANN. art. 46.02 § 3(a) (Vernon 1979). Tracking the language of the statute, the written order directed the examiner to submit a written report to the trial court in 30 days which included his or her observations and findings regarding appellant's competency to stand trial. *See* TEX.CODE CRIM.PROC.ANN. art. 46.02 § 3(d) (Vernon 1979 & Vernon Supp. 1993).

The case went to trial June 9, 1992, before a different trial judge than the one who had ordered the psychiatric examination. The trial testimony of Dr. Robert Lyman reflects that he examined appellant on January 28, 1992. However, the record does not reflect that a written report from Dr. Lyman or any other mental health expert was filed with the trial court as directed by the trial court's order and as required by Section 3(d) of the Code. The record also fails to reflect that appellant's counsel objected to such failure to file an examination report or that appellant's counsel filed a motion pursuant to Article 46.02 § 2(a) asserting that appellant was incompetent to stand trial. *See* TEX.CODE CRIM.PROC.ANN. art. 46.02 § 2(a) (Vernon 1979).

During his evaluation of appellant, Dr. Lyman reviewed appellant's records from the Gulf Bend MHMR Center and conducted a half-hour interview. Dr. Lyman testified that, in 1976, at age thirteen, appellant underwent a psychological evaluation when he was placed on probation. However, Dr. Lyman could not recall the diagnosis stemming from that evaluation. More recently, at Citizens Medical Center, appellant had been diagnosed as having an anti-social personality disorder. Dr. Lyman testified that an anti-social personality disorder would not necessarily cause a person to be unable to tell right from wrong. However, he did not tes-

858

tify regarding its effect on an individual's competency to stand trial. He did testify that appellant gave "appropriate" answers to questions during the court-ordered psychiatric evaluation. Also, he agreed with the prosecutor's statement that appellant had "a pretty good grasp of what was going on with his legal standpoint at that time." And, finally, Dr. Lyman opined that appellant was not suffering from a mental disease or defect on the day of the interview.

The trial court heard additional evidence at trial from which it could have inferred that appellant may have been incompetent to stand trial. For instance, the letters, recorded statements and grand jury testimony indicate that appellant was at Citizens Medical Center for a "nervous breakdown" for approximately a week around November 25, 1991. On December 13, 1991, appellant wrote an explicit letter to his wife in which he accused the victims in this case of initiating the sexual conduct for which he was indicted. On February 14, 1992, he wrote a note to a jailer in which he requested to be castrated and threatened to do it himself. Throughout trial, the court was reminded of appellant's criminal record. Finally, appellant's uncle testified that appellant had suffered a severe head injury in junior high, after which he "went from good to bad" and was "cuckoo" and "goofy." Previously, Dr. Lyman had testified that he was unaware of any prior head traumas suffered by appellant and that, because head traumas could affect an individual's mental state, the occurrence of any such head traumas and their effects on an individual should be considered in evaluating the mental state of a person.

■ Under Article 46.02 § 1 of the Texas Code of Criminal Procedure, a defendant is incompetent to stand trial if the defendant does not have "(1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against him." TEX.CODE CRIM.PROC.ANN. art. 46.02 § 1 (Vernon 1979); Loftin v. State, 660 S.W.2d 543, 545–46 (Tex.

Crim.App.1983). A defendant is presumed competent to stand trial unless proved incompetent by a preponderance of the evidence. Id. Pursuant to Section 4 of the Code, a civil incompetency hearing is held only "[i]f the court determines that there is evidence to support a finding of incompetency to stand trial...." TEX.CODE CRIM.PROC. ANN. art. 46.02 §§ 2, 4 (Vernon 1979 & Vernon Supp.1993). The standard of review on appeal from a trial court's failure to order a competency hearing is whether the trial court abused its discretion. See Boling v. State, 617 S.W.2d 241, 242 (Tex.Crim.App. 1981); Lewis v. State, 630 S.W.2d 809, 810 (Tex.App.—Houston [1st Dist.] 1982, no pet.).

■ To facilitate the trial court's finding of whether there is some evidence that a defendant is incompetent to stand trial, the court, on its own motion or motion by either party may order that the defendant undergo a psychiatric evaluation by a disinterested expert in the mental health field. TEX.CODE CRIM.PROC.ANN. art. 46.02 § 3 (Vernon 1979). The fact that a psychiatric examination is ordered by a trial court, however, does not constitute a determination that an issue exists regarding a defendant's incompetency. Gardner v. State, 733 S.W.2d 195, 200 (Tex. Crim.App.1987).

■ The issue of a defendant's competency to stand trial may be raised in either of two manners. TEX.CODE CRIM.PROC.ANN. art. 46.02 § 2 (Vernon 1979). Under Section 2(a) a pretrial motion by the court or the defendant asserting that a defendant is incompetent entitles the defendant to a hearing before the trial court to determine whether more than a scintilla of evidence supports a finding of incompetence. TEX.CODE CRIM. PROC.ANN. art. 46.02 § 2(a) (Vernon 1979); Mata v. State, 632 S.W.2d 355, 357 (Tex. Crim.App.1982) (citing Sisco v. State, 599 S.W.2d 607 (Tex.Crim.App.1980)). The second method arises when there has been no pretrial assertion of incompetency filed with the court. Under Section 2(b), during trial, if evidence of a defendant's incompetency is brought to the attention of the court from

*any source*, the trial court *must* conduct a hearing out of the presence of the jury to determine whether there is evidence to support a finding of incompetency to stand trial.[1] TEX.CODE CRIM.PROC.ANN. art. 46.02 § 2(b) (Vernon 1979); *Loftin*, 660 S.W.2d at 546; *Mata*, 632 S.W.2d at 357. A mere scintilla of evidence entitles a defendant to a brief Section 2(b) hearing, however informal. *See Mata*, 632 S.W.2d at 358.

In *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), the Supreme Court held that the due process clause entitles a criminal defendant to a competency hearing whenever "the evidence raises a 'bona fide doubt' as to [the] defendant's competence to stand trial." In *Pate* the defendant was found guilty of murdering his common-law wife. There, the evidence raising a "bona fide doubt" as to the defendant's competency was evidence that the defendant had suffered a childhood head injury, had been hospitalized for psychiatric evaluations, and had exhibited bizarre and irrational behavior, including murdering his eighteen-month-old son. *Id.* 383 U.S. at 378–383, 86 S.Ct. at 838–840; *see also Loftin*, 660 S.W.2d at 546 (defendant's paranoia did not raise "bona fide doubt"); *Ex Parte McWilliams*, 634 S.W.2d 815, 820 (Tex.Crim.App.1982) (evidence during guilty plea of prior psychiatric hospitalization does not raise "bona fide doubt"); *Ex Parte Halford*, 536 S.W.2d 230, 231 (Tex.Crim.App.1976) (trial evidence of prior head traumas, irrational behavior, and psychiatric hospitalization raised "bona fide doubt" in spite of psychiatrist's testimony that defendant could aid in counsel of his case). Evidence raising a "bona fide doubt" is that evidence which produces a real doubt in the judge's mind as to the defendant's present ability to consult with his lawyer with a reasonable degree of rational under-

standing or as to his present ability to understand the proceedings against him. *Loftin*, 660 S.W.2d at 546; *Mata*, 632 S.W.2d at 358. Generally, to raise the issue, there must be evidence of recent severe mental illness or bizarre acts by the defendant or evidence of moderate retardation. *Mata*, 632 S.W.2d at 359 (citing *Porter v. State*, 623 S.W.2d 374 (Tex.Crim.App.1981)).

Neither the trial court nor the parties made a pretrial assertion that appellant was incompetent to stand trial. Accordingly, the outcome of this issue depends on Section 2(b) of the Code. We must determine whether the record reflects that "evidence of [appellant's] incompetency [was] brought to the attention of the court from any source," TEX. CODE CRIM.PROC.ANN. art. 46.02 § 2(b) (Vernon 1979), such that a "bona fide doubt" as to appellant's incompetency was raised. *Pate*, 383 U.S. at 378–383, 86 S.Ct. at 838–840. If so, the Code mandates that the trial court should have held a Section 2 hearing to determine whether more than a scintilla of evidence supported a finding of incompetency to stand trial.[2] *Id.*

At least a scintilla of evidence was introduced at trial which indicated appellant may have been incompetent to stand trial. He suffered a severe head injury in junior high which made him "goofy" and changed his demeanor "from good to bad." He was hospitalized for a nervous breakdown seven months before trial, and only days before his recorded confession. In a letter to his wife written six months before trial, he accused his alleged victims of initiating the sexual conduct for which he was indicted. Four months before trial, he threatened to castrate himself. And, since junior high, he had developed a substantial criminal history.

It is not only this evidence which causes this Court to question whether the trial court

---

1. "The purpose of Section 2(b) is to ensure that a defendant is competent to stand trial even if his attorney does not know to raise the issue." *Mata*, 632 S.W.2d at 360.

2. Appellant's burden of proof in a Section 4 hearing would have been a preponderance of the evidence, and his burden of proof in a Section 2 hearing, looking only at the evidence supporting

incompetence, *Sisco v. State*, 599 S.W.2d 607, 613 (Tex.Crim.App.1980), would have been some evidence, or more than a scintilla. Under Section 2(b), therefore, a mere scintilla of evidence from any source requires the trial court to hold a Section 2 hearing, however informal. *See Mata*, 632 S.W.2d at 360.

abused its discretion by not holding a Section 2 hearing. No psychiatric evaluation of appellant's competence to stand trial was ever filed with the trial court as ordered in the initial district judge's order and as mandated in Section 3(d) of the Code. *See* TEX.CODE CRIM.PROC.ANN. art. 46.02 § 3(d) (Vernon Supp.1993). And, the psychiatrist who examined appellant testified only regarding appellant's sanity at the time of the offense and not specifically with respect to appellant's ability to consult with his lawyer or his understanding of the proceedings against him. Moreover, the record reflects that not a single dialogue between appellant and the presiding trial judge occurred involving appellant's competency to stand trial. Appellant never said anything on the record more than "yes, sir" and "no, sir." As a consequence, as a reviewing court, we have no record whatsoever which would indicate that the trial court inquired into appellant's potential incompetency to stand trial. Even an informal dialogue with appellant would have been sufficient to comply with Section 2(b). *See Mata,* 632 S.W.2d at 360.

We abate this appeal and remand to the trial court based on the evidence adduced during trial indicating appellant's potential incompetency and based on the trial court's failure to even briefly engage appellant in a dialogue sufficient to ascertain that appellant was not incompetent. We instruct the trial court to 1) determine whether appellant's competency at the time of trial can be ascertained after the passage of one and one-half years,[3] *Futch v. State,* 632 S.W.2d 743, 746 (Tex.Crim.App.1982), and 2) hold a retrospective Article 46.02 Section 2 hearing on the issue of appellant's competency to stand trial. *See Huff v. State,* 807 S.W.2d 325, 325 (Tex.Crim.App.1991). If the trial court determines that too much time has passed to hold a Section 2 hearing, it shall grant a new trial, and appellant shall remain in the custody of the Sheriff of Jackson County to answer the indictment in this cause. *See Futch,* 632 S.W.2d at 746. If the trial court holds a Section 2 hearing, it shall take such

further actions as are authorized by Article 46.02. *Id.* After the retrospective competency determination, appellant may file an additional brief to address any issues presented at the hearing. *Huff,* 807 S.W.2d at 326.

The appeal is abated. Appellant is remanded to the custody of the Sheriff of Jackson County, and the cause is remanded for proceedings consistent with this opinion.

---

3. Perhaps the court-appointed psychiatrist's evaluation would be of some assistance.