NUMBER 13-02-709-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG





THOMAS BLAIR,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                      Appellee.




On appeal from the 105th District Court
of Nueces County, Texas.




MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Hinojosa and Castillo



Opinion by Justice Castillo

         A jury convicted Thomas Blair of indecency with a child.


 It assessed
punishment at ten years confinement in the Institutional Division of the Texas
Department of Criminal Justice but recommended community supervision. The trial
court entered judgment consistent with the jury's verdict and recommendation. The
trial court has certified that Blair has the right to appeal. Tex. R. App. P. 25.2(a)(2). 
By one issue, Blair challenges the legal sufficiency of the evidence to show that he
exposed his genitals to the child with the intent to arouse and gratify his sexual desire. 
We affirm. 
I. BACKGROUND
A. The Indictment
         The State indicted Blair on seven counts of sexual assault and indecency with
a child. The jury acquitted Blair of all but count four: 
THOMAS BLAIR, defendant on or about September 29, 1995, in Nueces
County, Texas, did then and there with the intent to arouse and gratify
the sexual desire of THOMAS BLAIR, intentionally and knowingly expose
to [K.B.], a child younger than 17 years and not the spouse of THOMAS
BLAIR, any part of his genitals knowing that [K.B.] was present. 

         Blair challenges the legal sufficiency of the evidence to support the intent-to-gratify element of the offense of conviction. He directs our attention to the jury's
acquittal of him on six other counts in the indictment. Evidence rejected by the jury,
Blair argues, cannot supply the necessary intent-to-gratify element of the offense of
indecency with a child by exposure. 
B. The Relevant Evidence
         Blair is a practicing nudist. In a written statement introduced at trial by the
State, he admitted to taking K.B., his daughter, to nudist parties. He acknowledged
he allowed K.B. to drink at home. K.B. was thirteen or fourteen years old in 1995. 
Blair's wife, K.B.'s stepmother, testified that K.B. was a troubled teenager who drank
alcohol and smoked marihuana. The Blairs both drank alcohol and smoked marihuana
in the home. They permitted K.B. to drink and use drugs with them because the child
would be safer there than "hiding behind a fence in an alley." At a party one evening
at the Blairs', Ms. Blair testified, she noticed K.B. "drinking from other people's
drinks." Blair then allowed K.B. "to have a few shots hoping that it would make her
sick and teach her a lesson." 
         After K.B. went to bed that night, Ms. Blair went down the hall to the restroom. 
When she passed K.B.'s bedroom, she saw Blair kneeling, naked, by K.B.'s bed. K.B.
was in bed, under the covers. She was crying. Blair was hugging the child and
patting her on the back. Ms. Blair asked, "What's up?" but testified she was
unconcerned about Blair being nude in K.B.'s room. Blair always slept naked, Ms. Blair
insisted, and was getting ready to go to bed. 
         Corpus Christi police officer Sergeant Randy Walker testified he investigated a
runaway report on January 12, 1995. He went to the Blairs' house and spoke with
Blair and his wife, who had reported K.B. missing. He noticed pornographic magazines
scattered around the floor of the living room. On an end table in the living room, a
framed photograph of a woman bent over, exposing her anus and genitals, was openly
displayed. Because children were coming and going in the house, Walker testified, he
reported his observations to Child Protective Services. 
         K.B.'s younger half brother, B.B., testified Blair and his wife encouraged both
children to use alcohol and marihuana with them. He said the Blairs took both children
to nudist parties at which other children were present. B.B. also testified about Blair's
physical abuse of K.B. in 1995. B.B. witnessed one incident in particular: 
[Prosecutor]: Okay. You also witnessed some more abuse of
[K.B.], as well, is that correct?
 
[B.B.]: Yes, sir. 
 
[Prosecutor]: And one of those instances involved some vise grips,
is that right? 
 
[B.B.]: Yes, sir. 
 
[Prosecutor]: Can you tell the jury about that particular incident?
 
[B.B.]: We had gotten some cookies and she said that she wanted
some and my dad made her do jumping jacks naked with needle-nose
vise grips on her nipples.
 
[Prosecutor]: And you witnessed that? 
 
[B.B.]: Yes, sir. 

         Other family members and friends testified to K.B.'s outcry in 1995 of sexual
abuse by her father. K.B. testified that Blair sexually assaulted her on numerous
occasions over several months. She said that on the night her stepmother found Blair
naked in her bedroom, Blair had performed oral sex on her and had rubbed her vagina
with his finger. She related that on another occasion Blair made her ride in the car to
a friend's house with her shirt pulled up. She repeated her half-brother's account of
the incident in which Blair made her perform jumping jacks with vise grips on her
nipples. 
 II. LEGAL-SUFFICIENCY ANALYSIS
A. Standard and Scope of Review
         A legal-sufficiency challenge calls for appellate review of the
relevant evidence in the light most favorable to the prosecution. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Swearingen v. State, 101 S.W.3d 89, 95 (Tex.
Crim. App. 2003); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). We
consider all the evidence that sustains the conviction, whether properly or improperly
admitted or whether introduced by the prosecution or the defense, in determining the
legal sufficiency of the evidence. Conner v. State, 67 S.W.3d 192, 197 (Tex.
Crim. App. 2001). Similarly, in reviewing the legal sufficiency of the evidence, we
look to all of the evidence introduced during either stage of the trial. De Garmo v.
State, 691 S.W.2d 657, 661 (Tex. Crim. App. 1985).
         Legal sufficiency in this case is measured against the elements of the offense as
defined by a hypothetically correct jury charge for the case. Malik v.
State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury
charge is one that "accurately sets out the law, is authorized by the indictment, does
not unnecessarily increase the State's burden of proof or unnecessarily
restrict the State's theories of liability, and adequately describes the particular
offense for which the defendant was tried." Id. A hypothetically correct
jury charge would not simply quote from the controlling statute. Gollihar v.
State, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001). Its scope is limited by "the
statutory elements of the offense . . . as modified by the charging instrument." Fuller
v. State, 73 S.W.3d 250, 254 (Tex. Crim. App. 2002) (Keller, P.J., concurring); Curry
v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). When a statute lists more
than one method of committing an offense, and the indictment alleges some, but not
all, of the statutorily listed methods, the State is limited to the methods alleged. 
Fuller, 73 S.W.3d at 255; Curry, 30 S.W.3d at 404. This standard of legal sufficiency
ensures that a judgment of acquittal is reserved for those situations in which there is
an actual failure in the State's proof of the crime. Malik, 953 S.W.2d at 240. We
then determine if any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. at 319;
Johnson, 23 S.W.3d at 7. 
         In performing a legal-sufficiency review, we are mindful that the fact finder is
the exclusive judge of the credibility of witnesses and the weight to be given
testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Adelman v. State,
828 S.W.2d 418, 423 (Tex. Crim. App. 1992); Butts v. State, 835 S.W.2d 147, 151
(Tex. App.–Corpus Christi 1992, pet. ref'd). The fact finder may believe some
witnesses and refuse to believe others. Esquivel v. State, 506 S.W.2d 613, 615 (Tex.
Crim. App. 1974). It also may accept portions of a witness's testimony and reject
others. Id.; Butts, 835 S.W.2d at 151. 
         If we reverse a criminal case for legal insufficiency following a jury trial, we
reform the judgment to reflect conviction for a lesser offense only if: (1) we find that
the evidence is sufficient to support conviction of the lesser offense; and (2) a jury
charge on the lesser offense was either submitted or requested but denied. Collier v.
State, 999 S.W.2d 779, 782 (Tex. Crim. App. 1999) (plurality op.) (discussing
circumstances under which court of appeals may reform judgment following jury trial
to reflect conviction for lesser offense); Bigley v. State, 865 S.W.2d 26, 27-28 (Tex.
Crim. App. 1993) (clarifying same). Otherwise, we vacate the judgment of conviction
for legal insufficiency and order a judgment of acquittal. Swearingen, 101 S.W.3d
at 95. 
B. Applicable Law
1. The Elements of Indecency with a Child
as Modified by the Indictment
         The hypothetically correct jury charge against which we measure legal
sufficiency in this case would recite that Blair: (1) with the intent to arouse and gratify
his sexual desire; (2) intentionally and knowingly; (3) exposed any part of his genitals;
(4) to [K.B.]; (5) who was a child younger than 17 years; (6) not Blair's spouse;
(7) knowing that she was present.


 Blair focuses our analysis on the intent-to-gratify
element. 
2. Intent
         A fact finder may infer intent from the acts, words, and conduct of the accused
and from the circumstances surrounding the acts in which the accused engaged. 
Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); Dillon v.
State, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978). Intent is a question
for the trier of fact. Manrique v. State, 994 S.W.2d 640, 649 (Tex. Crim.
App. 1999). An accused rarely facilitates conviction by admitting to the requisite
culpability. It seldom is possible to prove by direct evidence what an accused intended
at the time of the incident. Thus, the fact finder usually must infer mental culpability
from circumstantial evidence rather than direct proof. See Gardner v. State,
736 S.W.2d 179, 182 (Tex. App.–Dallas 1987), aff'd, 780 S.W.2d 259 (Tex. Crim.
App. 1989); see also Hernandez, 819 S.W.2d at 810; Dillon, 574 S.W.2d at 94-95. 
Specifically, the fact finder can infer the requisite intent to arouse or gratify the sexual
desire of a person from conduct, remarks, or all the surrounding circumstances. 
Robertson v. State, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993); McKenzie v. State,
617 S.W.2d 211, 216 (Tex. Crim. App. 1981). The intent to arouse or gratify
may be inferred from conduct alone. McKenzie, 617 S.W.2d at 216. No oral
expression of intent is necessary. Id.; Gregory v. State, 56 S.W.3d 164, 171 (Tex.
App.–Houston [14th Dist.] 2001, pet. granted). Nor is visible evidence of sexual
arousal required. McKenzie, 617 S.W.2d at 216; Gregory, 56 S.W.3d at171. A child
need not actually see the appellant's genitals to sustain a conviction for indecency
with a child by exposure. Balfour v. State, 993 S.W.2d 765, 769 (Tex. App.–Austin
1999, pet. ref'd). 
C. Legal-Sufficiency Analysis
         A child's description of sexual contact is sufficient evidence from which a fact
finder may infer the intent-to-gratify element of indecency with a child. See, e.g.,
McKenzie, 617 S.W.2d at 216; Brown v. State, 871 S.W.2d 852, 856 (Tex. 
App.–Corpus Christi 1994, pet. ref'd). Blair argues, however, that the jury rejected
K.B.'s testimony that Blair caused his sexual organ to contact her mouth, caused her
sexual organ to contact his mouth, or penetrated her sexual organ with his finger. 
Without the rejected testimony, Blair maintains, the record is devoid of evidence from
which the jury could infer that he intended to arouse and gratify his sexual desire when
he went naked to his daughter's bedroom. 
         The jury, however, was free to reject the portion of K.B.'s testimony about the
sexual contact, believe the rest of her testimony, and conclude that Blair acted with
the requisite intent. See Esquivel, 506 S.W.2d at 615. Nonetheless, even assuming,
without deciding, that we must disregard K.B.'s rejected testimony in analyzing the
legal sufficiency of the evidence, the record reveals ample facts and circumstances
from which the jury could infer Blair's intent. Sexually explicit materials were openly
displayed in the Blair household, despite the presence of K.B. and her younger half-brother in the home. Alcohol and drugs freely flowed, even to the children. Moreover,
the jury was free to conclude that the jumping-jack incident served no discernible
purpose other than Blair's sexual arousal and gratification, from which the jury could
infer that Blair exposed himself to his daughter for the same reason. As to the
circumstances immediately surrounding the incident in K.B.'s bedroom that evening,
Blair appeared at night beside his daughter's bed, completely nude, after having given
her a significant quantity of alcohol. He hugged her even though he was naked. The
incident prompted Blair's wife to ask, "What's up?" Viewing the evidence in the light
most favorable to the State, we conclude that any rational trier of fact could have
found beyond a reasonable doubt the intent-to-gratify element of the crime of
conviction. See Jackson, 443 U.S. at 319; see also Johnson, 23 S.W.3d at 7. 
Accordingly, we hold the evidence legally sufficient to support the intent element of
Blair's conviction for indecency with a child by exposure. See Jackson, 443 U.S.
at 319; see also Johnson, 23 S.W.3d at 7. We overrule Blair's sole issue.
 III. CONCLUSION
         Having overruled Blair's sole issue, we affirm the judgment of conviction and
sentence. 
                                                                        ERRLINDA CASTILLO
                                                                        Justice
Do Not Publish.
Tex. R. App. P. 47.2(b).
Memorandum Opinion delivered and filed
this 25th day of March, 2004.