NUMBERS 13-06-210-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RODNEY ARIC WOOD, Appellant,

 

v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 94th District Court of Nueces County, Texas

 


MEMORANDUM OPINION


Before Justices Yañez, Rodriguez, and Garza 


Memorandum Opinion by Justice Garza


 A jury found appellant, Rodney Aric Wood, guilty of two counts of the offense of
indecency with a child. See Tex. Penal Code Ann. § 21.11 (Vernon 2003). Punishment
was assessed at five years' community supervision. By two issues, appellant claims the
evidence is legally and factually insufficient to support his conviction. We affirm.

I. Factual and Procedural Background

 Appellant, his wife, Cynthia, and their son Ethan, traveled from Sugar Land to visit
family in Corpus Christi. Once there, they decided to visit the home of James Lucas and
Margarita ("Maggie") Galvan. Cynthia and James had been friends for several years. After
an evening of socializing, James invited appellant, Cynthia, and Ethan, to spend the night
because he believed appellant and Cynthia were too intoxicated to drive.

 Maggie's daughters, S.C. and J.C., each have their own bedrooms. James put the
girls to bed in J.C.'s room, and appellant went to sleep in S.C.'s room. Cynthia and Ethan
slept in the living room. At approximately 3:00 a.m., appellant woke up to go to the
restroom and subsequently went into the room where the girls were sleeping. What
occurred after he went into the room is hotly contested.

 Appellant claims that he stumbled into the wrong room because he was confused. 
When the girls awoke, they appeared "startled" by his presence, J.C. in particular. 
Appellant attempted to calm them. Appellant testified, "I was just trying to tell her, you
know, I'm sorry, you know things happen, it was an accident, I came in the wrong room." 
S.C. got up and went into her bedroom and J.C. followed her. Appellant claimed, "[he] knew
they were still kind of startled so [he] followed them and [he] said, 'you know, I'm sorry, it
was an accident. I didn't mean anything.'" Appellant testified he was wearing underwear
and khaki shorts but did not have a shirt on. At that point, James came into the room and
asked what he was doing. James became upset and asked appellant to leave his home. 
"He kept telling me to get out and get out, and when he pushed me, and I fell down, that
was an indication to me that I needed to leave." Appellant left the home, leaving his wife
and son behind.

 James testified he was awakened by the sound of crying at approximately 3:00 a.m.
He got up and walked over to S.C.'s room. James could hear faint crying and appellant
talking; he thought it was appellant's wife that was crying. He looked into the room and saw
"about three and a half inches of the crack of [appellant's] rear end sticking out." He looked
into J.C.'s room and saw that the girls were not there and he became scared. He called out
their names and they came running out of S.C.'s room. James woke Cynthia up and asked
her to check on her husband because he wanted to know if appellant was naked. After a
few minutes, he saw appellant "popping out without a shirt pulling up his shorts" yelling,
"nothing happened, nothing happened." James asked Maggie to call the police. Upon
hearing this, appellant left the home.

 S.C. testified that appellant came into the room while she was sleeping. He climbed
into bed with her and J.C. He was totally naked. She heard J.C. crying and they both left
the room and went to her room. Appellant followed them into her room and got on the bed
with them. She saw appellant naked and saw his "private parts" which are located "between
his legs."

 J.C. testified she woke up and appellant was kneeling on the bed, "kind of on top of
me." He did not have any clothes on and she could see his "private, his body, his legs." 
She crawled onto her night stand and appellant said, "things happen." She followed her
sister to the other room and they went to the left corner of the bed. Appellant followed
them, still naked, and went to the other side of the bed and covered himself with the covers. 
That is when her dad came looking for them. Later that day, J.C. made an entry into her
diary documenting the events that had occurred. The seven-page entry was introduced
into evidence. (1)

 Maggie testified that she was awakened by the sound of crying. Thinking it was
appellant and his wife having an argument, she asked James to go check it out. When she
heard yelling, she went out to see what was going on. James was upset and asking
appellant to get out of the house. Maggie asked J.C. whether she had seen appellant's
"private parts." J.C. replied that she had and that it was "sticking up." A couple of days
later, they found a shirt and underwear in S.C.'s room. Maggie testified the clothes did not
belong to James. 

 Ricardo Jimenez, the lead forensic interviewer at the Nueces County Children's
Advocacy Center, interviewed J.C. The recorded interview was introduced into evidence
and shown to the jury. Jimenez testified that J.C. was graphic, age appropriate and did not
appear to be coached. J.C. stated to Jimenez that she had seen appellant's penis.

II. Legal & Factual Sufficiency

 By two issues, appellant claims the evidence is legally and factually insufficient to
support his conviction. Specifically, appellant claims there is no evidence of his intent to
arouse or gratify the sexual desire of any person. See Tex. Penal Code Ann. § 21.11(a)(2). 

 In a legal sufficiency review, we consider all of the properly or improperly admitted
evidence in the light most favorable to the verdict and determine whether, based on that
evidence and reasonable inferences therefrom, a rational jury could have found the
accused guilty of the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Swearingen v. State, 101 S.W.3d 89, 97
(Tex. Crim. App. 2003) (en banc). 

 In a factual sufficiency review, we view the evidence in a neutral light and ask
whether a jury was rationally justified in finding guilt beyond a reasonable doubt. See
Watson v. State, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). We then determine
whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and preponderance of
the conflicting evidence. Id. at 415. We will not reverse a case on a factual sufficiency
challenge unless we can say, with some objective basis in the record, that the great weight
and preponderance of the evidence contradicts the jury's verdict. Id. at 417.

 Under both legal and factual sufficiency standards, the fact-finder is the exclusive
judge of the witnesses' credibility and the weight to be given to their testimony. See
Swearingen, 101 S.W.3d at 97; Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App.
1997). The jury is in the best position to evaluate the credibility of the witnesses, and our
factual-sufficiency jurisprudence still requires an appellate court to afford "due deference"
to the jury's determinations. Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App.
2006). Although the reviewing court is permitted "to substitute its judgment for the jury's"
when considering credibility and weight determinations, it may do so only "to a very limited
degree." Marshall, 210 S.W.3d at 625 (citing Watson, 204 S.W.3d at 417).

 We measure the sufficiency of the evidence by the elements of the offense as
defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997). A hypothetically correct jury charge is one that accurately sets out the
law, is authorized by the indictment, does not unnecessarily increase the State's burden of
proof or restrict its theories of liability, and adequately describes the particular offense for
which the defendant was tried. Id.

 Appellant argues the evidence is insufficient to show intent to arouse or gratify sexual
desire because, looking at the evidence in a light most favorable to the prosecution, the only
factors militating toward a conviction include evidence that: appellant's penis was exposed;
appellant was in a room with two girls who saw his penis; the girls stated he followed them
to another room; he told them "things happen"; and, the mother stated that when she asked
one of the girls about the penis, the girl stated it was sticking up.

 Intent is a question of fact and may be inferred from the acts, words, and conduct of
the accused. Wallace v. State, 52 S.W.3d 231, 234 (Tex. App.-El Paso 2001, no pet.)
(citing Manrique v. State, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999)). Under section
21.11(a), "the requisite specific intent to arouse or gratify the sexual desire of any person
can be inferred from the defendant's conduct, his remarks and all surrounding
circumstances." McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981) (citing
Bowles v. State, 550 S.W.2d 84, 85-86 (Tex. Crim. App. 1977); Turner v. State, 600 S.W.2d
927 (Tex. Crim. App. 1980)); see Lewis v. State, 676 S.W.2d 136, 139 (Tex. Crim. App.
1984) ("The intent element in this case can only be proved by inferences from the evidence
presented."); Gregory v. State, 56 S.W.3d 164, 171-72 (Tex. App.-Houston [14th Dist.]
2001, pet. dism'd). No oral expression of intent is necessary, nor is visible evidence of
sexual arousal required. McKenzie, 617 S.W.2d at 216; Gregory, 56 S.W.3d at 172. Nor
is there a requirement that a male offender's penis be erect. Gregory, 56 S.W.3d at 172. 

 After reviewing all the evidence in the light most favorable to the verdict, we conclude
that any rational trier of fact could have found that appellant had the intent to arouse or
gratify his sexual desire beyond a reasonable doubt. See Jackson, 443 U.S. at 319; Young,
14 S.W.3d at 753; see also Malik, 953 S.W.2d at 240. (2) From the testimony adduced at trial,
specifically, that appellant stated, "things happen," and that his penis was "sticking up," the
jury could have inferred that appellant exposed himself for his own sexual gratification or
arousal. Gregory, 56 S.W.3d at 172 (citing Brown v. State, 871 S.W.2d 852, 856 (Tex.
App.-Corpus Christi 1994, pet. ref'd)). In addition, after a neutral review of the evidence,
we conclude the evidence is not so weak as to be clearly wrong and manifestly unjust, nor
is there contrary evidence that makes the finding of guilt against the great weight and
preponderance of the evidence. See Watson, 204 S.W.3d at 414; Johnson, 23 S.W.3d at
11; Malik, 953 S.W.2d at 240. Accordingly, we hold the evidence is legally and factually
sufficient to support appellant's conviction for the offense of indecency with a child. 
Appellant's first and second issues are overruled. 

III. Conclusion

 The judgment of the trial court is affirmed.


 _________________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 23rd day of August, 2007.
1. We note that although the diary was admitted into evidence at trial, J.C. was never questioned about it or its
contents. And, on appeal, neither appellant nor the State discuss the diary. Nevertheless, because it was
admitted as evidence, without objection, we have reviewed it and presume the jury considered it along with
all of the other evidence. Of particular significance to our analysis is that J.C.'s diary contains an entry
claiming that appellant was kissing her on the neck when he was in the bed with her.

2. Appellant argues that J.C.'s testimony was inconsistent with her recorded interview. Although the interview
was admitted into evidence, it was not made part of the record. Notwithstanding this claim, inconsistent
testimony is subject to a credibility determination which is clearly within the jury's province. Marshall v. State,
210 S.W.3d 618, 625 (Tex. Crim. App. 2006); Swearingen v. State, 101 S.W.3d 89, 97 (Tex. Crim. App.
2003) (en banc); Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997).