NUMBER 13-06-462-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 
 


BELINDA MONTOYA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 
 


On appeal from the 105th District Court 

of Nueces County, Texas

 
 

MEMORANDUM OPINION ON REHEARING 


Before Chief Justice Valdez and Justices Benavides and Vela


Memorandum Opinion by Justice Vela



 The State has filed a motion for rehearing in which it requests that we affirm
the judgment of the trial court or, alternatively, reform our previous opinion in this
cause. We grant, in part, the State's motion for rehearing. We withdraw our opinion
and judgment of June 7, 2007 and substitute this opinion and judgment in their place. 
In all other respects, the State's motion for rehearing is denied, as is the State's
motion for rehearing en banc.

 Appellant, Belinda Montoya, pleaded guilty, without a plea bargain agreement, (1)
to the offense of cocaine possession. The trial court sentenced her to fourteen
months in state jail. By one issue, appellant asserts the court failed to inquire into her
mental competency after the issue was sufficiently raised. (2) We abate and remand.

Background


 The question before us is whether evidence came to the trial court's attention
suggesting that appellant may have been incompetent to stand trial. If this occurred,
then the trial court was required, sua sponte, to determine by informal inquiry whether
there was some evidence from any source that would support a finding that appellant
may have been incompetent to stand trial. The record suggests that appellant may not
have had the ability to fully understand the proceedings against her. During the plea
hearing, the trial court questioned appellant about whether she understood the
consequences of pleading guilty without the benefit of a plea bargain agreement. As
shown by the following exchange, appellant's answers to the judge's questions were
not always responsive and coherent:

 Court: Ma'am, I'm told there is no plea bargain agreement in your case. 
Do you fully understand and are you aware of the consequences of
entering a plea of guilty without the benefit and protection of a plea
bargain agreement?

 Defense Counsel: Do you understand the full range of punishment is up
to two years or six months in the State Jail?


 Appellant: Oh, I understand that, yes.

 Court: All right. I'm glad you understand the range of punishment, but
what I'm asking you is do you understand the consequences, what it
means and what can happen to you in entering a plea of guilty without
the benefit and the protection of a plea bargain agreement?


 Appellant: Do I understand?

 Court: Yes.

 Appellant: Is that what we talked about?

 Defense Counsel: Yes, that the Judge has--can sentence you anywhere
from probation up to two years in the State Jail facility.


 Appellant answered affirmatively. After the court explained to her the
consequences of pleading guilty without the benefit of a plea bargain agreement, the
following exchange occurred:

 Court: Okay. So do you understand the consequences of entering a plea
of guilty without the benefit and protection of a plea bargain agreement?


 Appellant: Yes.


 Court: Okay. Do you want to proceed?


 Defense Counsel: Continue?


 Appellant: Continue?


 Court: Yes, you want to continue?


 Appellant: Yes.


 After accepting her guilty plea, the court heard punishment evidence. Defense
counsel offered the testimony of appellant and her sister, Michelle Montoya. Appellant
testified that she had cirrhosis and Hepatitis C. She said her life expectancy was "[s]ix
months to a year . . . ." She took four medications: lactose; Hypertone; Nexium; and
Lasix. She also received a monthly infusion of white blood cells. Defense counsel
asked her about the effects of her illnesses and the side effects of her medications as
follows:

 Counsel: Now some of the side effects you suffer from your medication
and from your illness, is depression one of them?


 Appellant: I guess you could say that and I get delusional. I don't know
where I'm at. I go into a sleeping coma. I just don't know where I'm at,
don't--I fall asleep anywhere. I don't know. Just different things.


 Counsel: Forgetfulness?


 Appellant: That, too.


 Counsel: Do you have any regression?


 Appellant: What do you mean?


 Counsel: Do you regress back to your childhood?


 Appellant: Yes, I act like a little kid.


 Counsel: Drowsiness?


 Appellant: Yes, I sleep a lot.


 Counsel: Weakness?


 Appellant: Yes.


 Counsel: And is it during this period that-


 Appellant: The only time I feel okay is when I have the white blood cells.


* * * * *



 Counsel: And could this have been one of the reasons for doing cocaine
is when you were depressed?


 Appellant: Yes, . . . .


* * * * *



 Counsel: And last night you tried to get yourself into the Emergency
Room?


 Appellant: Right. Well, they released me this morning about nine
o'clock.


 Counsel: And-


 Appellant: No, not even nine o'clock. It was maybe, like, ten-something,
eleven. . . .


* * * * *



 Counsel: What was your medical complaint?


 Appellant: My headaches and without--I had ran out of my medication,
so I have to go redo that and when I don't take my medicine, I just get
these real bad headaches and I go back into that stage again.


 Appellant's sister testified that appellant

 gets real sick. She's really sick. She's- There's times that she, you
know, she doesn't know what she's doing, that she needs constant care,
and they're trying to get that for her. They're trying to get a provider for
her because she's not well and she looks well right now. The days that
we see her, she's not. She's like a little kid. We have to get her
dressed. We have to sit her down to try to take her medicine and then
we have to constantly care, need constant care for her.


 The court made no suggestion that appellant may be incompetent to stand trial. 
Further, the court made no determination by informal inquiry or otherwise whether
there was some evidence from any source that would support a finding that appellant
may be incompetent to stand trial.

Applicable Law and Analysis


 The code of criminal procedure prohibits a trial court from accepting a guilty plea
"unless it appears that the defendant is mentally competent. . . ." Tex. Code Crim.
Proc. Ann. art. 26.13(b) (Vernon Supp. 2006). A defendant must also be mentally
competent to be sentenced. See Casey v. State, 924 S.W.2d 946, 949 (Tex. Crim.
App. 1996) (stating that sentencing is part of trial and competency considerations
apply); see also Tex. Code Crim. Proc. Ann. art. 42.07, § 2 (Vernon 2006). Article
46B.003 provides that a person is incompetent to stand trial if he or she does not
have: "(1) sufficient present ability to consult with the person's lawyer with a
reasonable degree of rational understanding; or (2) a rational as well as factual
understanding of the proceedings against the person." Tex. Code Crim. Proc. Ann. art.
46B.003(a)(1) & (2) (Vernon 2006). A person is presumed competent to stand trial
and shall be found competent to stand trial unless proven incompetent by a
preponderance of the evidence. Id. art. 46B.003(b). Article 46B.004 states how the
competency issue can be raised. The statute provides, in relevant part: "If evidence
suggesting the defendant may be incompetent to stand trial comes to the attention of
the court, the court on its own motion shall suggest that the defendant may be
incompetent to stand trial." Id. art. 46B.004(b). On suggestion that the defendant
may be incompetent to stand trial, subsection (c) states that "the court shall determine
by informal inquiry whether there is some evidence from any source that would
support a finding that the defendant may be incompetent to stand trial." Id. art.
46B.004(c). (3)

 In other words, if, under subsection (b), evidence comes to the trial court's
attention suggesting that the defendant may be incompetent to stand trial, then, under
subsection (c), the trial court is required to determine by informal inquiry whether there
is some evidence that would support a finding that the defendant may be incompetent
to stand trial. Id.; Lawrence v. State, 169 S.W.3d 319, 322 (Tex. App.Fort Worth
2005, pet. ref'd); cf., Kuyava. State, 538 S.W.2d 627, 628 (Tex. Crim. App. 1976)
(unless an issue is made of an accused's present insanity or mental competency at
time of plea, the court need not make inquiry or hear evidence on such issue); Godoy
v. State, 122 S.W.3d 315, 320 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd)
(same).

 A trial judge must conduct a competency inquiry (before the bench) only if
sufficient evidence exists to create a bona fide doubt in the judge's mind whether the
accused meets the test of legal competence. See Alcott v. State, 51 S.W.3d 596,
601 (Tex. Crim. App. 2001); Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim. App.
1999). Recently, in Salahud-Din v. State, 206 S.W.3d 203 (Tex. App.Corpus Christi
2006, pet. ref'd), we stated:

 Evidence sufficient to prompt a competency hearing or inquiry
must raise a "bona fide doubt" in the mind of the trial judge as to the
defendant's competency to stand trial; a bona fide doubt exists if the
evidence indicates recent severe mental illness, or at least moderate
mental retardation, or truly bizarre acts by the defendant.


Id. at 208 (citing Collier v. State, 959 S.W.2d 621, 625 (Tex. Crim. App. 1997)); See
Moore, 999 S.W.2d at 395 (to raise competency issue by means of accused's past
mental health history, there generally must be evidence of recent, severe mental illness
or bizarre acts by the defendant or moderate retardation).

 We review a trial court's failure to conduct a competency inquiry under an abuse
of discretion standard. Moore, 999 S.W.2d at 393; LaHood v. State, 171 S.W.3d
613, 617-18 (Tex. App.Houston [14th Dist.] 2005, no pet.). A trial court abuses its
discretion if its decision is arbitrary or unreasonable. Lewis v. State, 911 S.W.2d 1,
7 (Tex. Crim. App. 1995); Lawrence, 169 S.W.3d at 322. Appellant's testimony
showed that the side effects from her illnesses and medications caused her not to
know where she was at, to act like a little kid, to be forgetful, weak, drowsy,
delusional, depressed, and to go into a sleeping coma. The night before the plea
hearing, she went to the emergency room because she ran out of medication. She had
trouble remembering what time she left the emergency room. Her sister's testimony
showed that appellant was "really sick" and that there were times when appellant did
not know what she was doing. She also said, "The days that we see [appellant] . .
. [s]he's like a little kid. We have to get her dressed. We have to sit her down to try
to take her medicine and then we have to constantly care, need constant care for her."

 Further evidence suggesting appellant may have been incompetent to stand trial
appeared when the court was trying to determine if she understood the consequences
of pleading guilty without the benefit of a plea bargain agreement. When the court
asked her, "[D]o you understand the consequences, what it means and what can
happen to you in entering a plea of guilty without the benefit and the protection of a
plea bargain agreement?", she said, "Do I understand?" and "Is that what we talked
about?" After she made these remarks, the trial court explained the consequences of
pleading guilty without the benefit of a plea bargain agreement. When the court asked
her, "So do you understand the consequences of entering a plea of guilty without the
benefit and protection of a plea bargain agreement?", she answered affirmatively. 
However, when the court asked her if she wanted to proceed, she did not respond. 
Instead, defense counsel asked her, "Continue?", and she replied, "Continue?" When
the court asked her, "Yes, you want to continue?", she finally answered in the
affirmative.

 We conclude the evidence demonstrated recent, severe mental illness, or at
least moderate mental retardation, or truly bizarre acts by appellant. We find
particularly troublesome the evidence showing that appellant had experienced
instances when she was delusional, did not know where she was at or what she was
doing, and acted like a "little kid". The evidence showed appellant did not have a
rational as well as factual understanding of the proceedings against her. See Tex.
Code Crim. Proc. Ann. art. 46B.003(a)(2) (Vernon 2006). Accordingly, the evidence
was sufficient to prompt a competency inquiry because it met the threshold stated in
Salahud-Din and should have raised a bone fide doubt in the judge's mind regarding
appellant's competency to stand trial. See Salahud-Din, 206 S.W.3d at 208. We hold
that because evidence came to the trial court's attention suggesting appellant may
have been incompetent to stand trial, the court abused its discretion by failing, sua
sponte, to determine by informal inquiry whether there was some evidence from any
source that would support a finding that appellant was incompetent to stand trial. The
issue is sustained.

 We abate the trial court's judgment and remand the case for proceedings
consistent with this opinion. See Casey, 924 S.W.2d at 949; Brown v. State, 871
S.W.2d 852, 860 (Tex. App.-Corpus Christi 1994, pet. ref'd). 

 


 ROSE VELA

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and 

filed this 1st day of November, 2007.
1. In the "Amended Trial Court's Certification of Defendant's Right of Appeal" the trial court
certified that "this criminal case: is not a plea bargain case, and the Defendant has the right of appeal."
2. We view appellant's complaint as challenging the trial court's failure to formally suggest she
may be incompetent to stand trial, See Tex. Code Crim. Proc. Ann. art. 46B.004(b) (Vernon 2006).
3. If, after an informal inquiry, the court determines that evidence exists to support a finding of
incompetency, the court shall order an examination to determine whether the defendant is incompetent
to stand trial. Tex. Code Crim. Proc. Ann. art. 46B.005(a) (Vernon 2006). Furthermore, generally, if
the court determines that evidence exists to support a finding of incompetency, the court shall hold a
hearing before determining whether the defendant is incompetent to stand trial, and, on the request of
either party or on the court's motion, a jury shall make the determination as to whether the defendant
is incompetent. Id. arts. 46B.005(b), 46B.051.