NO. 07-03-0550-CR


NO. 07-03-0551-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C



SEPTEMBER 2, 2004



______________________________




SAMUEL BARTHOLOMEW SMIDDY, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;



NO. 12263-B & 13873-B; HONORABLE JOHN B. BOARD, JUDGE



_______________________________



Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

MEMORANDUM OPINION


 Pursuant to our order abating these appeals and remanding the causes, the trial
court held a hearing to determine whether appellant wished to prosecute his appeals. 
During the hearing, appellant affirmatively expressed his intention to no longer pursue the
appeals. No decision of this Court having been delivered, we dismiss the appeals. No
motions for rehearing will be entertained and our mandates will issue forthwith. (1)

 Accordingly, the appeals are dismissed.

 Don H. Reavis

 Justice

 

Do not publish.
























 
1. We acknowledge that Rule 42.2(a) of the Texas Rules of Appellate Procedure
requires a written withdrawal of a notice of appeal to be filed in duplicate in this Court. 
However, appellant's intention not to pursue his appeals being clear, we apply Rule 2 to
suspend the operation of Rule 42.2(a).



ouse, but left the
house for about two hours to take Crystal to the hospital; they returned later. When Orville
went to work early the next morning, he thought that Crystal was on the couch, but never
saw her again. 

 When Crystal missed a scheduled appointment on March 28, 1996, for child care
counseling, Johnna Campbell, a nurse who had been providing counseling to Crystal,
became concerned. Knowing that a divorce was pending, Campbell called the police and
reported Crystal missing after James called her on March 29 and asked if she knew
Crystal's whereabouts. Officers discovered Crystal's body on April 23, 1996, in a shallow
grave on a farm located in Donley County and owned by Frank and Vivian Corder,
appellant's grandparents.

 By his first issue, appellant contends the trial court erred in overruling his written
pretrial motion to suppress his confession. By his written motion, among other things,
appellant contended that his statement was involuntary, coerced, and/or enticed, and that
he was deprived of the right to counsel and did not intelligently understand and knowingly
waive any right to counsel affirmed by the Constitutions of the United States and the State
of Texas. We disagree.

 Before jury selection, the trial court heard appellant's motion to suppress. Officers
Mark Brown and Ron Hudson were called by the State as witnesses and Dr. Preston Shaw,
a physician and psychiatrist, was called by appellant. Neither appellant nor his mother,
who had been present when appellant gave his statement, were called to testify at the
hearing. Brown testified that after he told appellant's mother that if necessary, he would
get a grand jury subpoena to interview appellant, appellant voluntarily came to the police
station to be interviewed on April 22. At the time of this interview, appellant was regarded
only as a witness. Thereafter, Brown focused the investigation on the farm in Donley
County. On April 25, Brown and Hudson traveled to the farm and the investigation
concluded with the location of Crystal's body. 

 When Brown and Hudson returned to Amarillo, they contacted Orville and Kathy
Swanson. Kathy and appellant's brother were transported to the police station by officers
and appellant drove himself to the police station later that evening. Appellant was
interviewed by Hudson, and Brown occasionally monitored the interview from an adjoining
room. Brown confirmed that appellant was warned of his constitutional rights and that it
appeared to him that appellant understood the warnings. Appellant did not invoke any of
the rights explained to him. Before confessing on tape, he was allowed to visit with his
mother, who was present when he gave his statement. 

 Hudson likewise testified that appellant was read his rights and that he appeared
to understand them. Appellant told Hudson that he had some college education. During
the interview, Hudson asked for and received appellant's consent to search his pickup,
which he had driven to the police station. According to Hudson, during the interview,
appellant was permitted to speak with relatives and Hudson periodically left the room to
allow appellant time to "think." Appellant consented to the taking of hair samples,
photographs, and fingerprints. For about 20 minutes he spoke with his mother, who
offered to call an attorney, but appellant declined. Hudson also testified that appellant's
mother told him it would "look better" if he told the truth. Appellant was provided a soft
drink and then gave his statement. After Hudson again advised appellant of his rights, he
commenced giving his taped statement. Hudson denied that he threatened to arrest any
member of appellant's family or withhold necessities, such as drinks and restroom facilities. 

 Doctor Shaw, the only witness called by the defense, testified that he examined and
interviewed appellant for about two hours on September 23, 1997, and performed objective
oral tests, but did not administer any written tests. Doctor Shaw focused on appellant's
psychological or personality traits which might make him more vulnerable to duress. He
described appellant as a "dependent personality" and indicated that it would render him
more likely to respond to pressure in a manner inclined to please the people interrogating
him. Although Dr. Shaw testified that in his opinion, the confession "could have been"
involuntary, he could not testify that it was involuntary because he was not present when
the recording was made, and was at a "disadvantage because of not being present but on
one occasion." 

 In reviewing an appeal from the trial court's denial of a motion to suppress, great
deference is afforded to the trial court's decision on mixed questions of law and fact that
turn on an evaluation of credibility and demeanor. Guzman v. State, 955 S.W.2d 85, 89
(Tex.Cr.App. 1997). The evidence at the hearing focused only on the question of whether
appellant's statement was voluntary. Doctor Shaw expressed his opinion that the
confession could have been involuntary; however, he was unable to describe the statement
as such. On the other hand, the testimony of the two officers did not indicate
circumstances rendering the confession involuntary. In fact, Officer Hudson permitted 
appellant to visit with relatives and left the interrogation room so appellant could "think." 
Further, his mother was allowed to remain in the room while he gave his statement. There
was evidence that appellant had some college hours and that he voluntarily came to the
police station. Under these circumstances we cannot hold that the trial court abused its
discretion in overruling appellant's motion to suppress. (1) Appellant's first point is overruled. 

 By his second point, appellant contends the trial court committed reversible error
when it allowed the jury to render its verdict in his absence, contrary to articles 33.03 and
37.06 of the Code of Criminal Procedure. (2) We disagree. After the jury retired at 5:13 p.m.
to deliberate on guilt-innocence, the court was advised that appellant had attempted to
commit suicide by cutting his wrists. The court reported the attempted suicide to counsel
and also announced that appellant's bond would be revoked and he would be placed in
custody following his release from the emergency room. At this time, the jury also informed
the bailiff a verdict had been reached. The court made the following suggestion:

 Therefore, what I suggest, gentlemen, is that we receive the verdict in the
absence of the Defendant, but that we then recess and reconvene tomorrow
afternoon for the punishment phase, if this is a guilty verdict. By then, the
Defendant, Mr. Corder, should be back in our midst. Is there any objection
to this procedure?


Neither side objected and the jury was seated at 9:55 p.m. and a guilty verdict was
received.

 Article 37.06 expressly provides that a defendant's presence is not essential if his
absence is wilful or voluntary. Similarly, article 33.03 eliminates the requirement of
defendant's presence where the defendant voluntarily absents himself after pleading to the
indictment. In Bottom v. State, 860 S.W.2d 266, 267 (Tex.App.--Fort Worth 1993, no pet.),
Bottom's absence resulted from his attempt to harm himself by ingesting large quantities
of aspirin and other medication. The court of appeals held that his absence was voluntary
and proceeding to trial in his absence was not error. Also, in Valadez v. State, 979 S.W.2d
18, 20 (Tex.App.--Houston [14th Dist.] 1998, pet ref'd), the court held that a defendant's
absence from a motion hearing was not reversible error because Valadez did not
demonstrate any harm resulting from the alleged error. 

 Here, while on bond, appellant voluntarily left the courtroom and attempted to
commit suicide, thereby requiring medical treatment at the emergency room of a local
hospital. Although he was not hospitalized, when the jury returned to announce its verdict,
appellant had not yet returned to the courtroom. Appellant's absence was not due to a
sudden unexpected medical emergency. Rather, because he chose to intentionally absent
himself from trial, he waived his right to be present when the verdict was received. See
Gonzalez v. State, 515 S.W.2d 920, 921 (Tex.Cr.App. 1974). Further, appellant's counsel
did not object to the trial court's suggestion to receive the verdict in appellant's absence. 
Thus, appellant's second point of error is overruled.

 By his third point of error, appellant contends the trial court erred in not conducting
a hearing out of the jury's presence to determine whether there was evidence to support
a finding of incompetency to stand trial. We disagree. Although appellant did not testify
at the suppression hearing, he did testify during both phases of the trial. He acknowledged
that he had completed correction officer and police officer courses at Amarillo College and
was taking other courses. Otherwise, he testified that his taped statement was incorrect,
and that he made the false confession because he was afraid that some of his family
members would be charged. Although he testified about some mental evaluations years
before, Dr. Shaw's testimony at the suppression hearing was before the trial court and
could be considered.

 Article 46.02, section 2(b) of the Texas Code of Criminal Procedure provides that:

 If during the trial evidence of the defendant's incompetency to stand trial is
brought to the attention of the court from any source, the court must conduct
a hearing out of the presence of the jury to determine whether or not there
is evidence to support a finding of incompetency to stand trial. 


However, article 46.02, section 1A(b) provides that a person is presumed competent to
stand trial unless proved incompetent by a preponderance of the evidence. See also
Martinez v. State, 867 S.W.2d 30, 33 (Tex.Cr.App. 1993), cert. denied, 512 U.S. 1246, 114
S.Ct. 2765, 129 L.Ed. 2d 879 (1994) (recognizing the presumption of sanity). The test of
competency is whether the appellant had sufficient ability to consult with his attorney with
a reasonable degree of rational understanding and had a rational as well as factual
understanding of the proceedings against him. Loftin v. State, 660 S.W.2d 543, 545-46
(Tex.Cr.App. 1983). According to Moore v. State, 999 S.W.2d 385, 393 (Tex.Cr.App.
1999), cert. denied, 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000), in
determining whether evidence requires a separate jury to conduct a competency hearing,
the trial court is to consider only the evidence tending to show incompetency and a
competency hearing is not required unless the evidence is sufficient to create a bona fide
doubt in the mind of the judge whether the defendant meets the test of legal competency.
Further, on appeal, the standard of review is whether the trial court abused its discretion. 
Id. at 393; see also Boling v. State, 617 S.W.2d 241, 242 (Tex.Cr.App. 1981). 

 Appellant contends that his attempted suicide, together with the testimony of Dr.
Shaw was sufficient to require the trial court to conduct a hearing under article 46.02,
section 2(b); however, the test is not whether appellant was mentally unstable but, as
stated in Loftin, 660 S.W.2d at 545-46, whether appellant had sufficient ability at the time
of trial to consult with counsel with a reasonable degree of rational understanding and had
a rational as well as factual understanding of the proceedings. Considering the
presumption of competency, appellant's testimony at trial, and the testimony of his expert
at the suppression hearing, we conclude the trial court did not abuse its discretion. 
Appellant's third point of error is overruled.

 By his fourth point of error, appellant contends that his retained counsel rendered
ineffective assistance of counsel contrary to his rights under the Sixth and Fourteenth
Amendments to the United States Constitution and Article I, Section 10 of the Texas
Constitution. We disagree. As discussed in our analysis of appellant's first point, after
appellant declined his mother's suggestion to call an attorney, he gave an oral statement
confessing to the murder on April 25, 1996. He was taken before a magistrate the next
day and was released on bond. Trial counsel entered an appearance on July 26, 1996,
and made arrangements for Dr. Shaw to examine appellant in August 1997. Based on his
testimony, counsel filed a motion to suppress appellant's statement.

 Appellant contends trial counsel was ineffective because he failed to:

 1. object to the prosecutor's remarks during jury selection about the 5th
amendment right to silence and the presumption of innocence;


 2. present his expert witness as a defense witness during trial to lend
credence to the defensive theory that his confession was not voluntary;


 3. emphasize that he had little motive to kill Crystal and that his brother and
mother had stronger motives;


 4. request a continuance or psychological examination after his suicide
attempt;


 5. object to the trial court's receiving the jury verdict on guilt innocence in his
absence;


 6. request a poll of the jury after the verdict was received; and



condemned counsel for agreeing with the prosecutor's argument during the punishment
phase that he dumped her body "like trash." 

 We must review the ineffective assistance of counsel claim by the standard set out
in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). (3) Under
Strickland, a defendant must establish that (1) counsel's performance was deficient (i.e.,
fell below an objective standard of reasonableness), and (2) there is a reasonable
probability that but for counsel's deficient performance, the result of the proceeding would
have been different, a reasonable probability being a probability sufficient to undermine
confidence in the outcome. Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Cr.App. 1986).

 The adequacy of defense counsel's assistance is based upon the totality of the
representation rather than by isolated acts or omissions of trial counsel. Garcia v. State,
887 S.W.2d 862, 880 (Tex.Cr.App. 1994), cert. denied, 514 U.S. 1021, 115 S.Ct. 1368,
131 L.Ed.2d 223 (1995). Although the constitutional right to counsel ensures the right to
reasonably effective counsel, it does not guarantee errorless counsel whose competency
or accuracy of representation is to be judged by hindsight. Ingham v. State, 679 S.W.2d
503, 509 (Tex.Cr.App. 1984); see also Ex Parte Kunkle, 852 S.W.2d 499, 505 (Tex.Cr.App.
1993). A strong presumption exists that defense counsel's conduct falls within a wide
range of reasonable representation. Strickland, 466 U.S. at 690, 104 S.Ct. at 2064, 80
L.Ed.2d at 695; Dewberry v. State, 4 S.W.3d 735, 757 (Tex.Cr.App. 1999), cert. denied,
529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000). To sustain a challenge of
ineffective assistance, it must be firmly founded in the record, Mercado v. State, 615
S.W.2d 225, 228 (Tex.Cr.App. 1981), and the defendant must overcome the presumption
that counsel's conduct might be considered sound trial strategy. Jackson v. State, 877
S.W.2d 768, 771 (Tex.Cr.App. 1994). After proving error, a defendant must also
affirmatively demonstrate prejudice. Garcia, 887 S.W.2d at 880. Failure to make the
required showing of either deficient performance or sufficient prejudice defeats the
ineffectiveness claim. Id.

 Notwithstanding the facts that appellant (1) had completed correctional officer and
law enforcement courses at Amarillo College, (2) had declined his mother's offer to call an
attorney, and (3) had given the police a taped confession before trial counsel was
engaged, appellant now contends that trial counsel was ineffective. Formulation of a
credible defense under these circumstances is indeed challenging and requires counsel
to be creative. Based on this record, it is apparent that counsel's first objective was to
attack the confession; however, once the trial court overruled the motion to suppress,
successful defense prospects quite obviously diminished. 

 Regarding appellant's first complaint, we note that commenting during voir dire on
the right not to testify before that right has been invoked is not error. See Campos v. State,
589 S.W.2d 424, 426 (Tex.Cr.App. 1979). Next, counsel agreed that his expert witness
could be released after the suppression hearing presumably based on his knowledge of
the expert's testimony on cross-examination before the jury on other matters, and also in
accordance with fee agreement with the expert witness. Also, a defense based on the
contention that appellant's mother and brother were more likely candidates for prosecution
is not credible based upon his confession. Counsel's failure to request a continuance or
psychological examination after the suicide attempt would not have been productive as
discussed in our analysis of appellant's third point of error. Similarly, receipt of the jury's
verdict in appellant's absence was not error under these circumstances and failure to poll
the jury under this record did not constitute error. 

 Viewing appellant's complaints not as isolated acts, but in the context of the entire
record, we are not convinced that appellant has satisfied his burden to demonstrate that
his defense counsel was ineffective. Bridge v. State, 726 S.W.2d 558, 571 (Tex.Cr.App.
1986). Appellant had the burden to develop facts and details necessary to show that but
for counsel's failures, the outcome of the proceeding would have been different. On direct
appeal, evidence necessary to support an ineffective assistance claim is usually not
established by the record. Indeed, in most instances, where a claim of ineffective
assistance is raised, the record on direct appeal is normally not in condition to reflect the
failings of trial counsel or to demonstrate prejudice. See Jackson v. State, 973 S.W.2d
954, 957 (Tex.Cr.App 1998). Point of error four is overruled. 

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice

Do not publish. 
1. By written findings of fact, the trial court found that (1) at the time appellant gave
the statement, he was not in custody, and being a non-custodial interrogation the
statements made by appellant were admissible, and (2) even if appellant was in custody,
he freely and voluntarily waived his constitutional rights and gave his statement in
compliance with the Texas Code of Criminal Procedure.
2. Tex. Code Crim. Proc. Ann. art. 33.03 (Vernon 1989), and Tex. Code Crim. Proc.
Ann. art. 37.06 (Vernon 1981).
3. The Court of Criminal Appeals has overruled both Ex parte Duffy, 607 S.W.2d 507,
516 (Tex.Cr.App. 1980) and Ex parte Cruz, 739 S.W.2d 53 (Tex.Cr.App. 1987) by its
decision in Hernandez v. State, 988 S.W.2d 770 (Tex.Cr.App. 1999).